Arthur T. CONLEY, Appellant,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Appellee.

No. 16983.

United States Court of Appeals Ninth Circuit.

Aug. 10, 1961.

---

Jerrold A. Fadem and Harmon R. Ballin, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Asst. U. S. Atty., Chief, Civil Division, Jack F. Blair, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

This appeal stems from the rejection by the Bureau of Old Age and

Survivors' Insurance in the Department of Health, Education and Welfare of Arthur T. Conley's application for federal old age insurance benefits under the Social Security Act (49 Stat. § 622 as amended, 70 Stat. § 824, 42 U.S.C.A. § 401 et seq.). After the claims officer of the Bureau refused to reconsider the matter a hearing was had before an agency referee who sustained the Bureau. The Appeals Council of the Social Security Administration denied review and thus constituted the referee's determination the final decision of the Secretary. Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776.[1] Conley's suit in the District Court for judicial review of that decision as provided by 205(g) of the Act terminated in a summary judgment against him. This Court has jurisdiction of the appeal under Sec. 205(g) and 28 U.S.C.A. § 1291.

Conley made his application as a person who had been gainfully self-employed, but the Bureau took the position, and the referee decided, that Conley did not qualify and was ineligible for benefits on the sole ground that the income for 1956 and 1957 on which he had paid social security tax pursuant to 26 U.S.C.A. § 1401(1) was not "self-employment income" within the meaning of Sec. 211 (b) of the Act (42 U.S.C.A. § 411(b)).

■ "Self-employment income" is defined by Sec. 211(b) as "net earnings from self-employment" and the latter term is defined in turn in Sec. 211(a). Until 1956 Sec. 211(a) so far as pertinent, read "(a) The term 'net earnings from self-employment' means the gross income, as computed under chapter 1 of Title 26, derived by an individual from any trade or business carried on by such individual, less the deductions allowed under such chapter * * * (1) There shall be excluded rentals from real estate and from personal property leased with the real estate (including such

rentals paid in crop shares) * * *." However, in 1956 Congress, by amendment effective December 31, 1955, qualified the rental exclusion by adding this proviso:

"Except that the preceding provisions of this paragraph shall not apply to any income derived by the owner or tenant of land if (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural or horticultural commodities * * * on such land, and that there shall be material participation by the owner or tenant in the production or the management of the production of such agricultural or horticultural commodities, and (B) there is material participation by the owner or tenant with respect to any such agricultural or horticultural commodity * * *."

Prior to the amendment of this chapter of the Act, the coverage of the old age and survivors insurance program extended to the owner who was in complete charge of the farming on his own property or to the share crop tenant when the farm was operated under a share farming agreement. The amendment went a step farther and extended the coverage to the farm owner as well as the tenant in the latter situation in instances where there is "material participation" by the owner in the agricultural activity. Henderson v. Flemming, 5 Cir., 1960, 283 F.2d 882; Harper v. Flemming, 4 Cir., 1961, 288 F.2d 61. The Act contains no definition of "material participation" but the legislative history reveals that the lawmakers intended the term to include the exercise of authority by the owner with respect to matters that are of substantial importance in the particular farming operation as well as the performing of actual physical labor required

---

1. By order of this Court dated March 24, 1961, Abraham A. Ribicoff, as successor of Richard S. Flemming to the office of Secretary of the Department of Health, Education and Welfare, was substituted in his official capacity as appellee for all purposes of this suit.

in that enterprise. The making of "management decisions" by the owner may constitute "material participation" in the management of the production.[2]

"Although Congress did not undertake to phrase it in any such legal categories, this was a recognition that under some arrangements, the two, the owner of the land and the so-called tenant, are engaged in a joint venture. The result would be that the owner of the land, as well as the tenant, would, in this way, be engaged in the business of farming." Henderson v. Flemming, supra, 283 F.2d at page 888.

Conley contends that he comes within the 1956 amendment; in his application to the Bureau and in the several administrative proceedings following its rejection and afterwards in the District Court and finally here, he has asserted and maintained that although his entire income for 1956 and 1957 consisted of part of the crops grown on his farm by neighboring farmers he nevertheless made all important management decisions regarding the use of the property and the manner in which the operation should be carried on, thus meeting the statutory requirement of "material participation" in the management of the production of the agricultural commodities.

Conley's farm property is situated near Bristol, South Dakota, in the Great Plains region of the United States, consists of open fields barren of any improvements, and is devoted to the raising of grain by dry farming.[3] Conley farmed the land for many years but in 1956 and 1957, while he was living in California, the farming was conducted by neighboring farmers pursuant to several crop share agreements. The agreements each provided that the farm operation would "sow and plant the said lands in such [grain] crops as said party of the second part [Conley] shall direct * * *." They also provided that the tenant would purchase all seed, furnish all necessary machinery and equipment, perform all farm work; they further provided that the operator shall pay all expenses except for a part of any fertilizer that was used,[4] and that Con-

2. The Congressional explanation and interpretation of the phrase "material participation" as used in the 1956 amendment to the Social Security Act appears in the Senate Report No. 2133, 84th Cong. (2nd Sess.1956), p. 38, 3 U.S.Code Congressional and Administrative News (84th Congress 2nd Session 1956) p. 3915:

"Under this amendment it is contemplated that the owner or tenant of land which is used in connection with the production of agricultural or horticultural commodities must participate to a material degree in the management decisions or physical work relating to such production in order for the income derived therefrom to be classified as 'net earnings from self-employment'."

On July 21, 1956, Senator Homer E. Capehart made the following statements on the Senate floor concerning the addition of the words "or the management of the production" to the 1956 amendment:

"My amendment provides or makes clear that these privileges are extended not only to people who are actually working on the farms, but to those who own them and those who are managers of them. * * *

"[B]y inserting the words 'or the management of the production' after the word 'production' * * * there can be no doubt but that the legislative intent here is to include under social security coverage those farm owners who either engage in physical work relating to the farm activities, or (and I emphasize 'or') participate to a material degree in the management decisions of the farm." 102 Cong.Rec. 13819 (1956). The House Committee accepted the Senator's amendment. See Conference Report No. 2936, 84th Cong.2d Sess. 1956 (3 U.S.Code Cong. and Admin.News 3954 at 3957).

3. "Dry-farming" is defined by Webster's New International Dictionary, Second Ed., 1960, as "Production of crops without irrigation in regions of low or otherwise unfavorable rainfall principally by tillage methods conserving soil moisture by the use of drought-enduring or drought-evading crops."

4. There is no evidence that any fertilizer was purchased.

ley was to receive one-third of the crops and the farm operator the balance.

In rejecting the claim the referee characterized Conley as "an absentee landlord interested primarily in the protection and enhancement of his investment"; he considered Conley's share of the crops as investment or rental income derived from the use of his property by others and found as his ultimate factual conclusion that:

"There is no satisfactory showing that by the rental arrangement the claimant reserved and exercised the right to substantial supervision and direction in the actual production or the management of the production of the agricultural activities."

■ Section 205(g) of the Act (42 U.S.C.A. § 405(g)) provides in part that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." Under this section findings of fact made by the Secretary must be sustained by the court upon review if they find support in the evidence; the court is likewise bound to accept reasonable factual inferences that the Secretary draws from sufficiently supported evidentiary or primary facts. Miller v. Flemming, 9 Cir., 1960, 275 F.2d 763; Rosewall v. Folsom, 7 Cir., 1957, 239 F.2d 724.

However, this same finality cannot be afforded to the Secretary's finding that Conley did not materially participate, for that conclusion is the result of an application of the evidentiary facts and their inferences to an erroneous standard, tainted by an incorrect interpretation of the 1956 amendment.

We have before us, therefore, a fully reviewable question of law. Miller v. Burger, 9 Cir., 1947, 161 F.2d 992; Henderson v. Flemming, 5 Cir., 1960, 283 F.2d 882; Boyd v. Folsom, 3 Cir., 1958, 257 F.2d 778; 69 Harvard L.R. 239.

In his written opinion the referee set out three different tests that might be used to determine whether a landowner has met the requirement of material participation. The only one of these that could have application to the facts before him was the second:

"Material participation may also exist if the landlord makes decisions as to farm management or operations connected with the growing of the crop and operation of the farm as distinguished from working out the farm plan or lease arrangement at the beginning of the season." [5]

■ The reason this test is erroneous is that it universally imposes a standard too rigid to be applied in every case. The application of this standard in some cases, like the present, peremptorily thwarts the Congressional intent to accept managerial functions as "material participation" by dogmatically differentiating between a farm plan made at the beginning of the season from decisions as to farm management or operations connected with the growing of the crop and operation of the farm. But the plan may include those very decisions. Time is at most a secondary consideration in determining the importance of a plan or a decision; the vital inquiry is whether a decision or plan, without regard to when it is made, is of substantial im-

---

5. The other two tests stated are:
  "In order for the landlord to be considered as materially participating, he must furnish a significant part of the equipment and/or pay for a significant part of the cost of the production of the crop as distinguished from the cost that the landlord has in preserving his property particularly the soil, joined with periodic consultation with the tenant and periodic inspection of production activities.

  *　*　*　*　*

  "Material participation can also be established if the landlord physically participates to a substantial degree in the production of the crop during a season."

portance with respect to the farming operation. In order to resolve the ultimate issue, it is necessary that the trier of fact investigate all the facts and in doing so compare what was done in the way of managerial functions with what a proper operation of the farm reasonably required.

■ With reference to what Conley did, the evidence shows without contradiction that: in both years in question he made the farm plan for the ensuing season, deciding what was to be raised and designating the particular field in which a particular crop was to be planted. Although Conley consulted with the farm operators, the final decision as to these matters was made by him alone. The soil was well suited to the growing of flax, rye, wheat, barley, oats and other grains and Conley's choice as to which to grow was a calculated one based upon his experience in farming that ground, analysis of the soil, experimentation with different types of grain, examination of the yield of the previous season, and consultations with the farm operators. Conley not only decided what species of grain to raise but the particular quality and quantity of seed to sow. He also determined what portion of the property was to be summer fallowed, a matter of importance in the farm program for it largely determined the fertility of the soil and its productivity in the succeeding season.

In making these decisions, Conley visited the property twice a year. In the fall when the crops were harvested his visit extended over a period of two weeks during which time he determined from the yield and his inspection of the property what to plant the next year and what to summer fallow. His visit in the spring was largely to confirm his earlier decisions and review his plan with the farm operators to insure that it was understood. In all instances the farm

operators complied with Conley's directions.

With these facts the investigation of the referee ended; and from the failure of Conley to be at the farm during the growing period to make periodic decisions or to consult with the farm operators, the referee found and the Secretary argues before us that Conley's status was that of a landlord protecting his interest in property rather than one helping to manage a farming operation. However, the scope of inquiry should have been enlarged so as to admit facts showing what managerial and supervisory functions were actually required in this instance.

The record reveals without contradiction that no supervision or attention is given the grain crop during the growing period; the land is not irrigated, nor is it weeded or cultivated, and whether the seed grows to maturity depends entirely on the weather conditions.[6] Conley could not have contributed anything by planting his feet in the furrows and watching his grain grow; to use his words "[he] could of done no more if there daily all year."

The Secretary argues that there were decisions such as when to start plowing, planting, and harvesting that were of vital importance yet not made by Conley. However, the 1956 amendment does not demand that the owner settle all the problems or even all the important problems that arise in connection with the operation of the farm, for the word "participation" denotes joint activity in the entire enterprise and its modifier "material" only requires that the activity be of substantial value or importance. No decisions are conceivable under the present facts that are more important to the enterprise than those relating to the type and quantity of the crops. We are, of course, aware of the many "variables of our complex rural economy" (Henderson

---

6. Conley stated, "[N]ature does the 'growing of the crop' exclusively on that farm of small grains. * * * The only 'operation' after directing the planting would be, perhaps, a prayer for rain; and they can often use such supplication."

v. Flemming, supra, 283 F.2d at page 888) and recognize that in perhaps a great many farm operations the making of a farm plan at the beginning of the season would fall short of the statutory requirement; however, in the setting before us such a contribution, relating as it did to matters that govern both the course and the outcome of the enterprise could not be less than "material".

In sum the facts, when tested by the proper standard, demonstrate that Conley is entitled to the benefits of the Act; the Secretary should compute those benefits and enter an order accordingly.

The judgment is reversed.