Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellant,

v.

Estrid BENSON, Appellee.

No. 17082.

United States Court of Appeals
Eighth Circuit.

March 7, 1963.

Jerry C. Straus, Attorney, Dept. of Justice, Washington, D. C., for appellant. Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Washington, D. C., and John O.

Garaas, U. S. Atty., Fargo, N. D., and John G. Laughlin, Attorney, U. S. Dept. of Justice, were with him on the brief.

Paul Benson, of Shaft, Benson & Shaft, Grand Forks, N. D., for appellee.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

This is another case [1] involving coverage under the Social Security Act (42 U.S.C.A. § 401, etc.) in respect to a claim for old-age insurance benefits, based on the statutory postulate of "—material participation by the owner" of farm land "in the—management of production of—agricultural commodites" on her farm as found in Section 211(a) (1) of the Act supra (42 U.S.C.A. § 411(a) (1)). In light of the recent opinions of this and other Courts of Appeals [2] we judge all questions relating to standards of judicial review; matters of statutory construction; and, the legal effectiveness of the Secretary's conclusion that appellee did not "materially participate" in the farm operation here to be considered, so as to qualify her for old-age benefits, to be now settled and determined with finality as not to require further expression on those subjects.

The facts in the case at bar are these: Appellee, a widow, presently 68 years of age, is the owner of a 320-acre farm in North Dakota. In 1940 that farm was leased for two years under a written "farming contract" to one Racine Tweet. Thereafter, Tweet continuously operated that farm from year to year up to and including the critical time of appellee's qualifying for old-age insurance benefits. By the provisions of the original written agreement the landowner reserved the right to supervise all farming operations. The landowner had the right to issue de-

tailed farming instructions and to designate what work was to be performed and the time and manner in which it was to be performed. The agreement provided that the owner was to furnish all seed, pay one-half of the cost of threshing or thirty-five per cent (35%) of the cost of combining, and one-half of the cost of binding twine used in harvesting the crop. The tenant was to pay the remaining production costs, do the physical work, provide labor as needed and supply his own farm machinery and horse-power. The crop was to be divided equally between the parties. Appellant concedes that "(i)f the provisions of the above agreement *actually* governed the relationship between the claimant and her tenant in 1956, 1957 and 1958, (he) would have to hold that there existed an arrangement in those years which provided for the claimant's material participation in the farming activities. However (he says) the claimant's contention that this agreement continued in effect in 1956, 1957 and 1958, without modification, is not supported by the record." The latter conclusion is premised in a misconception of applicable law when related to the facts found in this record as a whole.

The Appeals Council in the case at bar decided that the "farming contract" executed in 1940 did not continue in force as a document to be considered in its determination of what "arrangement" appellee had with her tenant at the critical time for qualifying her for old-age benefits.

Section 47–16–06, North Dakota Century Code, Annotated, provides:

*"When a lease is presumed renewed.* —If a lessee of real property remains in possession thereof after the expiration of the hiring and the lessor accepts rent from him, the parties are presumed to have re-

1. The third to reach this Court during the current term presenting the same issues.

2. See: Foster v. Celebrezze, Secretary, 313 F.2d 604 (8 Cir., 1963) ; Celebrezze v. Wifstad, 314 F.2d 208 (8 Cir., 1963) ;

Hoffman v. Ribicoff, 305 F.2d 1 (8 Cir., 1962) ; Conley v. Ribicoff, 294 F.2d 190 (9 Cir., 1961) ; Harper v. Flemming, 288 F.2d 61 (4 Cir., 1961) ; and Henderson v. Flemming, 283 F.2d 882 (5 Cir., 1960).

newed the hiring on the same terms and for the same time, not exceeding one year."

In its interpretation of that statute the North Dakota Supreme Court has held:

"Under section 6094, C.L. 1913,[3] if a lessee of real property remains in possession thereof after the expiration of the hiring and the lessor accepts rents from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one year; but from year to year so long as the possession is continuous, and no other contract is entered into, the terms of the old contract are in full force and effect and govern and control the rights of the parties.

"An executed change in the written contract, by which the lessor furnished the seed and half the crop on division, instead of the lessee furnishing the seed and receiving two thirds of the crop on division, does not alter the nature or break the continuity of the holding, and is not a new agreement creating an estate but only an executed modification of the old contract." (Ct's Syl. 1 & 2, Timm v. Arvidson, 1929, 58 N.D. 634, 227 N.W. 59.)

The Secretary's legal conclusion that the 1940 "farming contract" was not to be considered as to what "arrangement" existed between appellee and Tweet in 1956, 1957 and 1958, is clearly erroneous in the light of North Dakota law *ante*.

So is his determination that because there is no recital in that written farm contract requiring appellee to pay "one-half of the cost of fertilizer" and "spraying expenses" such payments were voluntary contributions not called for by the "arrangement" between her and her tenant. See: 17 C.J.S. Contracts § 378, pp. 867–868. From the very nature of such supplemental agreements to the written "farming contract" it is manifest that the same were an added part of the "ar-

rangement" for "material participation—in production" by appellee.

In the case at bar there is a total absence of:

"—a specific finding by the Appeals Council of the precise nature of the agreement that existed between the claimant and her tenant in 1956, 1957 and 1958." (Decision, Appeals Council.)

Such a finding was "deemed" to be "unnecessary". We think this is a misconception of the proper and a practical application of the statutory standards fixed by the Congress for determination of old-age benefits under the Act supra. The statute provides that "(t)here shall be excluded rentals from real estate" to qualify a farm owner for old-age benefits "(A) *income * * * derived under an arrangement * * ** which provides * * * that there shall be material participation by the owner or tenant in the production or the management of production of * * * agricultural * * * commodities, and (B) there is material participation by the owner * * * with respect" thereto. (Emp. added.) Such is a dual standard of qualification—and not a universal one related to the variegated farm operation conducted in this country. It is a "case-to-case" standard. An "arrangement" peculiar to farming in the area of production where the farm is situated. In the light of the legislative history and statutory standard fixed by the Act, we cannot perceive how that standard can be legally applied *sans* a determination of the terms of an "arrangement". If it is applied without determination of the terms of an "arrangement", then the statutory standard seemingly becomes a universal concept, one existing only in the mind of the fact-finder, and would be admeasured accordingly. The errancy thereof is made manifest by our decision in the Wifstad case, supra.

Here, as a matter of law, appellee had an "arrangement" existing at

---

3. Section 47–16–06 is the same as Section 6094, Compiled Laws, 1913, North Dakota.

the critical time to her qualification for old-age insurance benefits. Did she, in fact, "materially participate" in such production in accordance with that "arrangement"? Seemingly, because she had a competent farmer, who knew how she wanted her land to be farmed and he farmed it according to her desires and directions, always without disagreement or rancor between them, the Secretary concluded what she did was not "material" to "production of agricultural commodities" on her farm. This is fallacious reasoning that cannot be determinative of appellee's right to old-age benefits. This fallacious reasoning permeates the entire decision of the Appeals Council. Therefore, it is decisional and subject to correction on review as a matter of law, because it results in a misapplication of the standard as fixed by the Act supra.

█ Appellee had the "right" to manage her farm under the "arrangement" *ante*. What she did was this: She advised and consulted twice a month with her tenant. The tenant never did anything unless he came in and consulted with appellee. They consulted as to what crops to seed, what field needed fertilizer, when spraying was needed, what the rotation of crops was to be on her farm. She selected the seed, determined when the plowing was to be done (which incidentally was different from that which her tenant performed for his father under an "arrangement" for production of crops on other farm lands in the area) and where the seed was to be sown. She made tours of inspection, regularly inspecting the work done by her tenant as to the progress of crop growth and the harvesting thereof. The tenor of the error committed by the Secretary may best be summed up in a statement of the Hearing Examiner in his decision which was adopted, in part, by the Appeals Council:

"Mr. Tweet was unable to recite any specific complaints by the claimant (as to how he worked the farm) although on one occasion she told him to mow the weeds in the oats. Mr. Tweet stated that he has a good idea of how claimant wants the farm run and he runs it that way. The chief difference between the way she wants the farm run and the way his father wants his farm run is that his father lets him plant barley and she doesn't always permit this to be done. He explained this further by stating that it was the claimant's wish to have wheat planted the year after a field has been summer fallowed and barley planted the year after the wheat. His father is not that particular. Mr. Tweet indicated that once the decision is made as to where the grain is to be planted, he is on his own. (That is, 'she don't set my machinery for me.')." (Par. added.)

Competency or incompetency of the "cultivator" of farm land is not within the statutory standard fixed by the Congress in Section 211(a) (1) supra. A consideration thereof as being decisive of the applicability of that statutory standard can only lead to a misapplication of the provisions of the Act supra. We think the reasoning supra stems from a shortcut consideration of such standard, because it was not first determined what "arrangement" in fact existed between appellee and her tenant which the Congress said should be the measure for "material participation in production." There is a total absence of any finding in the case at bar, either by the Hearing Examiner or the Appeals Council, as to what appellee's "arrangement" with Tweet was in fact. All that is emphasized in the Appeals Council's decision is that there was no "active participation in production activities." What is said in the Conley case, supra, at 294 F.2d l. c. 195, is an appropriate answer thereto:

"However, the 1956 amendment does not demand that the owner settle all the problems or even all the important problems that arise in connection with the operation of the farm, for the word 'participation' denotes joint activity in the entire enterprise and its modifier 'material' only re-

quires that the activity be of substantial value or importance."

The decision of the District Court [4] is in all things

Affirmed.

Clark, Circuit Judge, dissented.

4. Benson v. Ribicoff, 201 F.Supp. 189 (D.C.N.D.)