Leon J. SAYER

v.

Elliot **RICHARDSON**, Secretary of Health, Education and Welfare of the United States.

Civ. A. No. 17808.

United States District Court,
W. D. Louisiana,
Alexandria Division.

June 15, 1973.

Edward Larvadain, Jr., Alexandria, La., for plaintiff.

Donald E. Walter, U. S. Atty., and Leven H. Harris, Asst. U. S. Atty., Shreveport, La., for defendant.

NAUMAN S. SCOTT, District Judge:

The plaintiff, Leon J. Sayer, brings this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision by the Secretary of Health, Education and Welfare. The Secretary has filed a motion for summary judgment.

STATEMENT OF FACTS

The plaintiff filed an application for old-age insurance benefits on January 6, 1967, requesting that he receive benefits effective April 29, 1967, his sixty-fifth birthday. On February 14, 1967, he was held entitled to old-age insurance benefits by the Social Security Administration and began receiving benefits in April, 1967. Thereafter, the plaintiff and his wife were informed by the Social Security Administration by letters dated January 24, 1970, May 6, 1970 and May 14, 1970, that deductions should have been imposed from his retirement benefits for the years 1967, 1968 and 1969 because of plaintiff's work activity, and that since plaintiff's benefits were not so reduced, he received an overpayment totaling $4,567.70 for the years in question. The plaintiff was told that this overpayment would be recovered by the Administration by withholding all of his benefits from January, 1970 thru January, 1972. This present action was then commenced by the plaintiff seeking to recover from the Social Security Administration the benefits withheld during that period of time.

The plaintiff was a multiple line traveling salesman employed primarily by the Davis-Weil Manufacturing Company, a supplier of sanitation and maintenance

products. He had worked for Davis for over twenty years. Sayer was also employed as a sideline salesman by A. J. Ruhlman Corporation, a supplier of cafe, hotel and institutional janitorial supplies and equipment. He combined this job with his main selling activities for Davis, covering the same territory and canvassing essentially the same accounts.

There seemed to be little direct control exercised by either of the employers over his work activities. The plaintiff had not been required to send work or itinerary reports to Davis for several years and his only contact with Davis, with the exception of a receipt of a duplicate of the invoices from his sales, was when he placed orders and was in turn mailed his commission checks. This was equally true of his relationship with Ruhlman. Sayer never filed any reports with the company and his only contact involved placing of orders and receiving commissions.

Sayer was paid by both companies strictly on a commission basis. He paid his own business expenses out of these gross commissions, since neither of the companies differentiated between net earnings and business expenses.

A large amount of the gross commissions paid to Sayer were applied to his business expenses. His assigned territory included about two-thirds of Louisiana and a small part of Mississippi. Prior to 1967, he spent most of the nights on weekdays away from home. However, after 1967, due to his wife's ill health, Sayer drove back home each night to take care of her. Thus, although he spent less money on food and lodging, his automobile expenses rose considerably after 1967. Sayer testified that he drove approximately 50,000 miles per year after 1967 and also had other business expenses such as long distance phone calls, advertising costs, etc.

At the Administrative Hearing, Sayer testified that due to his deteriorating health, he had originally planned to quit work when he applied for old-age and retirement benefits in January, 1967. However, in order to keep his group health insurance policy in effect, since his ailing wife was otherwise uninsurable, he made an arrangement with both Davis and Ruhlman whereby he could continue to work spasmodically as his health permitted. Plaintiff also alleged that it was his intent to keep his earnings below the maximum allowed under Section 203 of the Social Security Act, so as to prevent any deductions from being taken from his social security benefits.

Sayer further testified that early in 1968 he submitted his 1967 federal income tax return to the Social Security Administration for their examination as is required for retirement benefit receipients receiving earnings from work activities. Likewise, he also tendered his 1968 and 1969 federal income tax return to them at the appropriate time. In all three instances reported net income on his tax form was accepted without question by the Social Security Administration. Only in early 1970 did the Social Security Administration notify Sayer that his reported net income for the three years in question could not be accepted by them.

After a very careful and thorough consideration of the above stated facts, it was the opinion of the Appeals Council (which is the final decision of the Secretary subject to judicial review) that Sayer was an employee of Davis and was self-employed for Ruhlman. Because Davis did not differentiate between net earnings and business expenses when paying the plaintiff his salary, the gross wages he received from Davis could not for social security purposes be reduced by excluding his business expenses. Accordingly, since deductions on account of earnings were not imposed from Sayer's benefits for the years 1967, 1968 and 1969, a resultant overpayment occurred. Section 203(b) and (f) of the Act, 42 U.S.C. § 403(b) and (f).

## CONCLUSIONS OF LAW

Section 404.1026(a)(8) of the Social Security Regulations No. 4 (20 C.F.R. 404.1026(a)(8)) states with respect to the deductibility of business expenses from remuneration otherwise classified as wages:

"(8) Amounts paid specifically—either as advances or reimbursements—for traveling or other bona fide ordinary and necessary expenses incurred or reasonably expected to be incurred in the business of employer are not wages. Traveling and other reimbursed expenses must be identified either by making a separate payment or by specifically indicating the separate amounts where both wages and expense allowances are combined in a single payment."

This Court is in full agreement with the Secretary concerning the characterization of Sayer's employment with Davis and Ruhlman. 210(a) of the Act, 42 U.S.C. § 410(a); 210(j)(2) of the Act, 42 U.S.C. § 410(j)(2); 210(j)(3)(D) of the Act, 42 U.S.C. § 410(j)(3)(D); and Section 404.1004(d)(3)–(5) of Social Security Regulations No. 4 (20 C.F.R. 404.1004(d)(3)–(5)). However, we disagree with the finding that a person who drives over 50,000 miles per year in his business cannot deduct his expenses from his salary for social security purposes unless he is compensated separately for his expenses or they are identified separately from the remainder of his salary.

The issue is best characterized as being whether or not an employee should be held accountable for the failure of his employer to segregate reimbursable expenses from gross earnings. We agree with the jurisprudence set out below which does not penalize the employee in this type of situation.

In Angell v. Fleming, 291 F.2d 72 (4th Cir. 1961), the Fourth Circuit upheld the claimant's contention that though the employer paid in social security on the basis of the gross amount paid the employee, the actual earnings or net earnings were the proper measure to consider. The Court placed great emphasis on the fact that it was unrealistic for a man to travel over a territory the size of plaintiff's without incurring substantial expenses.

Similarly, in Miller v. Ribicoff, 195 F.Supp. 534 (W.D.S.C.1961), the claimant challenged the agency's determination that because the employer had not segregated reimbursable expenses from gross earnings, this amount would be used to determine earnings for purposes of deciding whether the employee had exceeded the earnings limitation. The Court in that case disagreed with the agency's contention stating that traveling and necessary expenses paid to a salesman were not "wages", and although the employer did not specifically designate commissions and expenses, the salesman could not be denied benefits on the ground that his compensation exceeded maximum wages where he did not control sums paid to him. The Court stated its holding in the following manner:

"Under Section 405 of the Act, which must be read in *pari materia* with Section 1009 of Title 5, Administrative Procedure Act, the Court is authorized to review administrative regulations and determinations of law; and while the review of administrative decisions should be approached with some deference, the court may not abdicate its judicial function. Rubin v. Flemming, D.C.N.Y.1959, 172 F.Supp. 590.

The definition of 'wages' in the Act suggests no ground on which sums paid for traveling and other expenses might be considered 'wages'. Regulation No. 4 does recognize that such sums were not intended to be so considered.

As stated by Judge Soboloff in the case of Harper v. Fleming, 4th Cir., 1961, 288 F.2d 61, 64. 'There is no warrant for reading into the statute fine spun limitations of which the leg-

islative authority has given no intimation.'

The Social Security Act must be administered with much informality, and satisfaction of claimant's statutory burden is to be judged in a practical way. Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591.

The requirement of specific designation would work an undue hardship on the plaintiff in this case. Indentification of sums paid to him by his employer was outside plaintiff's control. It would be unreasonable and unfair to hold plaintiff responsible for the failure of [his employer] to comply with the regulation. The purpose of the section of the Act under which deductions are imposed against benefit is to insure that individuals who are otherwise entitled would not receive social security benefits when their actual earnings exceed the prescribed maximum. It is not the purpose of this section to defeat the benefits to which an individual is entitled when that individual in fact earned less than the prescribed maximum. Angell v. Fleming, 4th Cir., 291 F.2d 72." P. 535.

Additionally, in Joyner v. Ribicoff, 206 F.Supp. 874 (W.D.Va.1962), the Court, as in the *Miller* case, supported the claimant's contention by holding that Congress in Section 203(e)(4)(A), 42 U.S.C. § 403(e)(4)(A), could not have intended to require of the employed individual a determination on his gross income though there be expenses while at the same time allowing the self-employed individual a determination on his net income. With regard to the question of whether non-segregated expenses should be treated differently from those correctly segregated by the employer, the Court felt that such a distinction unfairly penalized the employee for the errors of the employer. In commenting on the definition of "wages" as defined in Regulation No. 4, Section 404.1026, the Court stated:

"It will be observed that under the last quoted paragraph reimbursements for expenses are not included as 'wages' if they are 'specifically' earmarked as such by the employer but by some administrative legerdemain such reimbursements become 'wages' if they are not specifically earmarked. No provision in the Act makes this distinction and while it would doubtless simplify the administration of the Act (at the expense of imposing injustices upon the tax payers) if the Act did so provide, the Secretary has no authority to write such a provision into the Act.

\*     \*     \*     \*     \*     \*

Furthermore, it is simply inconceivable that Congress could have intended that an employee who grossed $1400.-00 but netted only $800.00 from his work would forfeit his right to social security payments while a self employed man who grossed and netted precisely the same amounts could continue to draw old-age benefits.

\*     \*     \*     \*     \*     \*

And it is incredible that Congress could have intended that if two persons having precisely the same net income for income tax purposes, one would have larger 'earnings' for social security purposes than another simply because one was an employee and the other was self employed. Congress used the term wages in its normal sense—pay for services—and therefore not including those portions of amounts received which merely reimbursed the employee for expenses incurred." Pp. 876–877.

Additionally, Sayer was in absolute good faith in all of his dealings with the Social Security Administration prior to the time that they terminated his benefits. An examination of the record from pages 169–174 supports this contention. The good faith of Sayer is exhibited by the documents on pages 172–173, wherein it is established that the plaintiff returned his check for September, 1967, because he felt that he had earned more than the maximum allowed for that month.

An examination of the same pages also reveals the lack of reasonable care upon the part of the Social Security Administration. For a total of three years they led Sayer to believe that his net wages was a determining factor as to whether he would receive monthly benefits. Also, as evidenced by the letter on page 170, the claimant was informed that he was owed $407.70 for the year 1967, even though he had written the Social Security Administration a letter informing them that he had been overpaid for the month of September, 1967. (Tr. 173).

Therefore, it is the opinion of this Court that the decision of the Secretary must be reversed. Summary judgment is granted in favor of the plaintiff, with the Social Security Administration hereby being ordered to restore to Sayer all of the benefits withheld from him during the period in question.

Plaintiff should submit a judgment in accordance with Rule 9(e) of this court.