Aubrey H. THOMPSON, Appellee,

v.

Caspar WEINBERGER, Secretary of
Health, Education and
Welfare, Appellant.

No. 75–1864.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1976.

Decided Nov. 11, 1976.

Steven L. Jones, Atty., Dept. of HEW, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., Washington, D. C., William B. Cummings, U. S. Atty., Alexandria, Va., Morton Hollander and Leonard Schaitman, Attys., U. S. Dept. of Justice, Washington, D. C., on brief), for appellant.

Paul G. Turner, Richmond, Va. (R. Harvey Chappell, Jr., Christian, Barton, Epps, Brent & Chappell, Richmond, Va., on brief), for appellee.

Before RUSSELL, FIELD and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

In this case, there is no issue of fact. The question of law was decided on summary judgment, and is whether sums voluntarily paid by a member of the City Council of Richmond, Virginia, who is under 72 years of age, for office rent and secretarial service, are to be excluded from his gross income received from the City for his services as a council member in determining whether the amount so earned makes applicable the provisions for deductions from Social Security benefits in § 203(b) and (f) of the Social Security Act, 42 U.S.C. § 403(b) and (f).[1] The district court held that such sums

---

**1.** 42 U.S.C. § 403(b) and (f) provide in pertinent part as follows:

(b) Deductions, in such amounts and at such time or times as the Secretary shall determine, shall be made from any payment or payments under this title to which an individual is entitled, and from any payment or payments to which any other persons are entitled on the basis of such individual's wages and self-employment income, until the total of such deductions equals—
(1) such individual's benefit or benefits under section 402 for any month, and
(2) if such individual was entitled to old-age insurance benefits under section 402(a) of this title for such month, the benefit or benefits of all other persons for such month, the benefit or benefits of all other persons for such month under section 402 based on such individual's wages and self-employment income,

if for such month he is charged with excess earnings, under the provisions of subsection (f) of this section, equal to the total of benefits referred to in clauses (1) and (2). If the excess earnings so charged are less than such total of benefits, such deductions with respect to such month shall be equal only to the amount of such excess earnings. * * *
(f) For the purposes of subsection (b) of this section—
    *     *     *     *     *     *
(5)(A) An individual's earnings for a taxable year shall be (i) the sum of his wages for services rendered in such year and his net earnings from self-employment for such year, minus (ii) any net loss from self-employment for such year.
    *     *     *     *     *     *

paid for office and secretarial expenses were excludable, and we reverse.

In 1968, the Social Security Administration determined that plaintiff and his wife were entitled to retirement benefits since July 1967, under § 202 of the Act, 42 U.S.C. § 402. In 1970, plaintiff ran for the City Council of Richmond, Virginia and was elected. He took the oath of office July 1, 1970. As part of his campaign, plaintiff promised that, if elected, he would "plow back" enough of his councilmanic income to make himself available to the public. In compliance with this pledge, plaintiff rented an office and employed a part-time secretary. Admittedly, there was no requirement by the City of Richmond that plaintiff do this and no agreement by the City to reimburse him for the expenses entailed thereby.

Plaintiff's salary as a member of the Council is $400 per month, thus, he received $2400 for the balance of 1970 and $4800 a year thereafter. He paid $1284.22 in 1970 and $3918.89 in 1971 for such office rent and stenographic services. He was paid the full amount of Social Security benefits to which he claimed to be entitled until October 19, 1972, when he was notified by letter from the Social Security Administration that he and his wife had received more in social security benefits than they were entitled to. It was indicated in the letter that excess payments would be offset against future payments to which the Thompsons might otherwise be entitled.[2]

Sections 203(b) and (f)[3] of the Social Security Act, as applicable to taxable years 1970 and 1971, provided that a beneficiary under age 72 could earn $1680.00 in a 12-month taxable year without suffering a loss of benefits. If the sums plaintiff expended for office rent and stenographic services be excluded from the total received form the City, his earned income for 1970 would be $1,284.22 and for 1971 it would be $881.11, both well within the maximum allowance, so he and his wife should receive their full social security benefits. If such expenditures cannot be excluded, the decision of the Social Security Administration was correct.

Plaintiff alleges in paragraph 5 of his Complaint that "In both 1970 and 1971 after extensive discussions plaintiff was advised by the [Social Security] Administration that he could deduct his office expenses from his Councilmanic income for the purpose of computing his retirement insurance benefits." The allegation is neither expressly admitted nor expressly denied by the Secretary's answer, but it argumentatively denies the allegation by making reference to the administrative transcript of the case which defendant attached as an exhibit to the answer. Plaintiff did testify that before renting the office he discussed the situation with both the Social Security Administration and the Internal Revenue Service. He was informed by both agencies that he might exclude his office expenses from salary. We have no question before us as to whether Thompson legitimately deducted his office rent and secretary's pay in making his income tax return. Representatives of the Social Security Administration did not refute plaintiff's testimony,

**2.** The letter in pertinent part is as follows:
"Dear Mr. Thompson:
It has been determined that all of your salary as a councilman will be considered in determining the amount of social security benefits to be paid to you and Mrs. Thompson. Therefore, based on your total earnings of $4800.00 in 1971, you received $1689.50 more in social security benefits than you should have. Mrs. Thompson received $830.40 more than she should for a total incorrect payment in 1971 of $2519.90.
Since you will also earn $4800.00 in 1972, you and Mrs. Thompson are incorrectly paid

for January 1972 through October 1972 for a total incorrect payment in 1972 of $2457.60. Based on your earnings of $4800.00, you would ordinarily be due a check for $143.90 in November 1972 and Mrs. Thompson would be due a check for $72.00 in November 1972. However, it will be necessary to withhold these benefits and your benefits through March 1974 and part of April 1974 to recover the overpayment for 1971 and the incorrect payment for 1972."

\* \* \* \* \* \*

**3.** 42 U.S.C. §§ 403(b), (f). See footnote 1.

and the available records were not sufficiently complete to confirm it clearly.

The Administrative Law Judge of the Social Security Administration ruled that plaintiff should be allowed to exclude office and stenographic expenses from his salary from the City for the purpose of determining whether his earned income was too large to entitle him to full social security benefits. The Appeals Council reached the opposite conclusion; however, in view of plaintiff's good faith in the matter, all recoupment from the Thompsons for the years 1970 and 1971 was waived.

The basic issue in this appeal turns upon the validity and applicability of a regulation promulgated by the Social Security Administration pursuant to authority granted by § 205 of the Social Security Act.[4] The regulation, 20 CFR 404.1026(a)(8), provides as follows:

"(8) Amounts paid specifically—either as advances or reimbursements—for traveling or other bona fide ordinary and necessary expenses incurred or reasonably expected to be incurred in the business of the employer are not wages. Traveling and *other reimbursed expenses must be identified either by making a separate payment or by specifically indicating the separate amounts where both wages and expense allowances are combined in a single payment."* (Emphasis supplied). It is uncontested that the payments by the City of Richmond to claimant were not segregated or itemized as between salary and reimbursement for "ordinary and necessary expenses" by either of the methods specified in the just-quoted regulation. Thus, if the regulation is valid and applicable, plaintiff's claim must fail.

Three questions are presented to this court:

(1) Is plaintiff self-employed so as to make 20 CFR 404.1026(a)(8) inapplicable to him?

(2) Did the Secretary have authority to promulgate the regulation?

(3) Is the limitation in the regulation arbitrary, as held by the district court?

The first of these questions we answer in the negative; the second in the affirmative; and the third in the negative.

■ That plaintiff is an employee of the City of Richmond, and is not a self-employed person, results from the fact that he is covered by the Social Security Act by virtue of an agreement between the City of Richmond and the Social Security Administration executed pursuant to §§ 210(a) and 218 of the Social Security Act, 42 U.S.C. §§ 410(a) and 418.[5] Since wages under 42 U.S.C. § 409 are defined as "remuneration paid . . . for employment," [6] the sala-

---

**4.** 42 U.S.C. § 405(a):

"(a) The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder."

**5.** § 210(a), 42 U.S.C. § 410(a) provides in relevant part:

The term "employment" means * * * any service of whatever nature, performed after 1950 * * * except that * * * such term shall not include— * * *
(7) Service performed in the employ of a State, or any political subdivision thereof, or any instrumentality of any one or more of the foregoing which is wholly owned thereby, except that this paragraph shall not apply in the case of—

(A) service included under an agreement under section 218 * * * *

Section 218(a), 42 U.S.C. § 418(a), provides:
(a)(1) The Secretary of Health, Education, and Welfare shall, at the request of any State, enter into an agreement with such State for the purpose of extending the insurance system established by this title to services performed by individuals as employees of such State or any political subdivision thereof. Each such agreement shall contain such provisions, not inconsistent with the provisions of this section, as the State may request.
(2) Notwithstanding section 210(a), for the purposes of this title the term "employment" includes any services included under an agreement entered into under this section.

**6.** 42 U.S.C. § 409 defines a number of terms, including wages, for the purpose of computing social security benefits.

ry plaintiff received from the City of Richmond should be included as wages under 42 U.S.C. § 403(f)(5)(A) in determining excess earnings.

■ In answer to the second question posed above, we hold that under § 205 of the Social Security Act,[7] the Social Security Administration had authority to promulgate 20 CFR 404.1026(a)(8). It is well established that Congress may empower an administrative agency to issue regulations to implement legislative enactments. The statute itself here is in language too plain to warrant discussion. In most of the cases cited involving the validity of a regulation of a federal administrative agency promulgated pursuant to an Act of Congress, it is the Congressional Act itself that is attacked, as involving too broad a delegation of power. Here, plaintiff does not attack the validity of § 205, but contends that the administrative regulation is beyond the scope of the power delegated by the statute.

Both parties have cited district court decisions as supporting their respective contentions. The cases cited by both sides involve traveling salesmen who were regarded as employees and not as self-employed persons. The question in all cases was whether traveling expenses should be deducted from total compensation received for the purpose of determining whether a claimant for Social Security benefits received sums in excess of the maximum amount allowable. Plaintiff cites *Sayer v. Richardson*, 360 F.Supp. 199 (W.D.La.1973), *Joyner v. Ribicoff*, 206 F.Supp. 874 (W.D. Va.1962), and *Miller v. Ribicoff*, 195 F.Supp. 534 (W.D.S.C.1961), as cases in which traveling expenses were excluded from wages notwithstanding the employer's failure to segregate or identify reimbursement for expenses from wages. On the other hand, a contrary conclusion is reached in *Ruddy v.*

*Richardson*, CCH, UIR, ¶ 10,262.301 (N.D.N. Y.1971), *Gillen v. Gardner*, CCH, UIR, ¶ 10,-262.301 (W.D.Ky.1968), *Warren v. Ribicoff*, CCH, UIR, ¶ 10,262.301 (S.D.Ia.1961), and *Dearing v. Flemming*, CCH, UIR, ¶ 10,262.-301 (W.D.Ia.1959).[8]

Of course, these cases are persuasive only, and no appellate decision involving this very regulation was cited by either party.[9] The question presented is one of first instance in this court.

We are not persuaded by the traveling salesmen cases cited above which have held that travel expenses are excludable in the determination of whether the beneficiary of Social Security benefits has sufficient wages to reduce the benefit payments. All of those cases are based on the practical necessity of a traveling salesman traveling, and the resulting inevitable expense. Indeed, there cannot be other than a practical requirement by the employer that a traveling salesman travel. Here, it is admitted there was no requirement by the City of Richmond that the plaintiff maintain an office and secretarial service. Thompson acknowledges that other members of the council use their business offices and the like for such. It is also noteworthy that the expenses Thompson claims as reimbursed were not treated as such by the City in any way, especially by a book entry, cf. *Angell v. Flemming*, 291 F.2d 72 (4th Cir. 1961), and persuasive to us is the fact that, although the City Charter provides that members of the Council "may be allowed their actual expenses incurred in representing the city," none of the money paid to Thompson was even claimed to have been paid under this charter provision.

The case before us is not one in which the reimbursed expenses were required by an employer, even as a practical necessity; the case here is one in which the expenses now

---

**7.** 42 U.S.C. § 405, set out in footnote 4.

**8.** In the UIR service we find full written opinions of the district courts in *Ruddy* and *Warren* only. Apparently *Gillen* and *Dearing* were decided without opinion. The regulation involved here was not referred to in the opinion in *Ruddy*, but was in *Warren*.

**9.** Plaintiff does cite *Harper v. Flemming*, 288 F.2d 61 (4th Cir. 1961). That case is clearly not in point. It involves the issue as to whether, under 42 U.S.C. § 411(a)(1), an elderly farm owner's activities should be held to be "material participation" in the management or production of the farm when it was operated with the assistance of a bank and tenants.

claimed to be reimbursable were not required by the employer, and for which the plaintiff did not even seek reimbursement from the City in addition to his salary, although a specific provision of the City Charter would have allowed him so to do. In these circumstances, we find no reason to apply, and we do not, those traveling salesmen cases which would exclude the expenses. We do not express an opinion as to which group of the traveling salesmen cases is correct. That matter is better left for another day.

Most of the decisions cited by the Secretary to uphold the validity of the regulation promulgating the specific identification requirement do not deal with the validity of regulations as such but with the validity of the statutes which authorize them. The case of *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970), however, did uphold the validity of a regulation, as against the charge that it was not authorized by the statute.[10] The provisions of the Social Security Act providing for aid to families with dependent children provide that state agencies, administering the aid "shall, in determining need [of an eligible child], take into consideration any other income and resources [of the child], as well as any expenses reasonably attributed to the earning of any such income."[11] The statute was implemented by a regulation of the Department of Health, Education, and Welfare (HEW), which provided in pertinent part:

"(a) A State plan for aid and services to needy families with children . . . must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent . . . will be made only in relation to the child's natural or adoptive parent, or in relation to a child's steppar-

ent who is ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children.

"(b) The inclusion in the family, or the presence in the home, of a 'substitute parent' or 'man-in-the-house' or any individual other than one described in paragraph (a) of this section is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State . . . [I]n the consideration of all income and resources in establishing financial eligibility and the amount of the assistance payment, *only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in paragraph (a) of this section will be considered available for children in the household in absence of proof of actual contributions.*" (Emphasis added).

A California law provided that "payments to a 'needy child' who 'lives with his mother and a stepfather or an adult male person assuming the role of spouse to the mother although not legally married to her' . . . shall be computed after consideration is given to the income of the stepfather [or other person living with the mother]."[12] The issue in *Lewis*, then, was whether the California law was valid because in conflict with the HEW regulation. The answer depended upon whether the regulation itself was invalid as going beyond the statutory authorization. In reversing a contrary decision by a three-judge court, the Supreme Court upheld the regulation. In *Lewis*, as in the case now before us, the regulation gave specific substance to the mandate of the statute. The court held that "HEW

---

10. That this is the basis for the attack upon the regulation is implied in the Supreme Court decision but clearly appears from the decision of the district court. *Lewis v. Stark*, 312 F.Supp. 197 (N.D.Calif.1968).

11. 42 U.S.C. § 602(a)(7) (1964 ed. Supp. IV).
    The quotation is as quoted by the Supreme Court, 397 U.S. at 555, 90 S.Ct. at 1283.

12. Quotation from opinion of the Court, 397 U.S. at 553, 554, 90 S.Ct. at 1283.

might reasonably conclude that only he who is as near as a real or adoptive father would be has that consensual relation to the family which makes it reasonably certain that his income is actually available for support of the children in the household." 397 U.S. at 558, 90 S.Ct. at 1285.

Remembering that wages are "remuneration paid . . . for employment," and applying the standard from *Lewis*, the question here, then, is might the Secretary have reasonably concluded that advances or reimbursements for bona fide ordinary and necessary expenses incurred in the business of the employer, are not wages; and, if so, might the Secretary have reasonably concluded that reimbursed expenses should either be paid separately or identified. The answer to the first part of the question is so obviously yes as to warrant no discussion. We are of opinion the answer to the second part is also yes. If for no other reason than Social Security tax is not paid on expenses, but on wages, we think it not unreasonable to conclude that there be identification of the amount of the expenses. It is not reasonable to assume that an employer would pay Social Security tax on expenses rather than identifying the amount paid. This particular aspect of the problem is emphasized here by the facts that the City treated none of the $400 per month salary as expenses, and the plaintiff never claimed payment for expenses under the Charter, if he were in fact "in the business of the employer," rather than on a project of his own.

■ In response to the third question, in reversing the district court, we hold that the Secretary's refusal to allow plaintiff to deduct the expenses of maintaining an office and secretarial expenses from his gross income for purposes of section 203(b) and (f) of the Act was not arbitrary. While it may seem to follow from our opinion that upholding the specific identification requirements of 20 CFR 404.1026(a)(8) is sufficient unto itself, there are other reasons, and they run as well to our answer to the second question.

The Secretary, in arguing that the regulation is not arbitrary, says it is sustainable as a prophylactic measure as was the regulation involved (disclosure provided for all installment credit contracts with four or more payments) in *Mourning v. Family Publications*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), and compares the similar statute (to prevent the parties to sham marriages from recovering under the Social Security Act) upheld in *Weinberg v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The argument is persuasive and may be well taken, but we do not find it necessary to rest our decision upon this base. We think it demonstrable that the regulation is "reasonably related to the purpose of the enabling legislation," *Mourning*, 411 U.S. at p. 369, 93 S.Ct. at p. 1661, and thus not arbitrary for at least two reasons.

First. The higher the average monthly wage upon which the claim for benefits is based, the higher the benefit is (up to a maximum). See 42 U.S.C. § 415. If entitlement to benefits were based on wages which included business expenses, then excess earnings should be computed by the same method, as it now is. To hold otherwise would achieve the anomalous result of allowing benefits to be computed using the higher figure and excess computed using the lower. This is precisely the kind of inconsistency condemned by the Court in *Lewis*, 397 U.S. at 559, 90 S.Ct. at p. 1283, where, as a reason for sustaining the regulation, it said: "Any lesser duty of support might merely be a device for lowering welfare benefits without guaranteeing that the child would regularly receive the income on which the reduction is based . . ."

Second. The City pays the tax and files wage reports on the total wage it pays plaintiff. Under 42 U.S.C. § 415(f), the Secretary must recompute a beneficiary's primary insurance amount for any part of a year in which he has wages. This recomputation, of course, would be based on Thompson's salary of $400 per month. Should the recomputation result in higher benefits, they would go to Thompson, while, at the same time, under Thompson's theory, he would be able to reduce his excess payments by virtue of his business expenses.

We think the Secretary's plan of computing eligibility for benefits and liability for excess on the same standard is a reasonable administration of the Social Security program and that the regulation, 20 CFR 404.1026(a)(8), is reasonably related to it. Accordingly, we are of opinion the regulation is not arbitrary.

The judgment of the district court will be vacated and the case remanded with directions to enter judgment for the defendant.

*REVERSED AND REMANDED.*