Ivan M. HOFFMAN, Appellant,

v.

Abraham A. RIBICOFF, Secretary of
Health, Education and Welfare,
Appellee.

No. 16821.

United States Court of Appeals
Eighth Circuit.

June 30, 1962.

Rehearing Denied Aug. 6, 1962.

James A. Stemmler, of Stemmler & Stemmler, St. Louis, Mo., for appellant.

John G. Laughlin, Atty., Dept. of Justice, Washington, D. C., for appellee. William H. Orrick, Jr., Asst. Atty. Gen., Washington, D. C., and D. Jeff Lance, U. S. Atty., St. Louis, Mo., with him on the brief.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

The principal question in this appeal is whether the appellant, who had an insured status under the Social Security Act (42 U.S.C.A. § 402(a)), was entitled to a recalculation of his old-age insurance benefits on the basis of claimed self-employment income derived in the year 1956 from leased farm land. The Appeals Council in the Social Security Administration (20 C.F.R. 403.710(e)) ruled that such income did not constitute "self-employment income" as defined in Section 211(a) (1) of the Act (42 U.S. C.A. § 411(a) (1)) because appellant had not factually established that he *materially participated* "in the production or the management of the production of * * * agricultural * * * commodities, under an arrangement which provided for such participation." Appellant sought judicial review of that decision in the District Court as provided in Section 205(g) of the Act. (42 U.S.C.A. § 405(g)). On motion for summary judgment, the District Court affirmed the Secretary's administrative decision. We review that decision "in the same manner as a judgment in other civil actions" under Section 405(g) supra, and 28 U.S.C.A. § 1291.

The record before us establishes that appellant is fully insured under the provisions of the Social Security Act and has been receiving benefits on the basis of reported wages from his being employed by other persons. In 1957, he filed an income tax return and reported earnings, in part from self-employment during 1956, and paid self-employment taxes thereon. Thereafter, he made application in due form for recalculation of benefits which he claimed were due him under the Act based on self-employment earnings. The Bureau of Old-Age and Survivors Insurance notified appellant that self-employed earnings claimed in connection with two farms owned by him had been excluded as a basis for determining the amount of benefits which might be paid him under the Act.[1] Being dissatisfied with that determination, appellant requested a hearing before a Referee. Such a hearing was held and appellant personally appeared and adduced what evidence he had in support of his claim for added benefits. Thereafter, the Referee made findings of fact and on the basis thereof concluded that appellant had self-employment income in 1956 amounting to $2,645.27. The Appeals Council, on its own motion, reviewed the decision of the Referee and denied appellant's claim for additional benefits on the basis of self-employment income.[2] In doing so, the Appeals Council stated: "The statement of evidentiary facts by the referee are adopted and incorporated herein but the inferences, findings and conclusion based on such facts are not adopted."[3] Thereupon, the Appeals

---

1. In its certificate denying appellant old-age benefits based on self-employment income, the Bureau gave notice to the District Director of Internal Revenue with whom appellant filed his tax return, of such denial "so that refund of self-employment taxes paid" could be refunded to appellant.

2. Such review is authorized by 20 C.F.R. § 403.709(m). The decision of the Appeals Council is final "unless a civil action is filed in a District Court of the United States as provided in Section 205 (g) of the Act."

3. The findings of fact as stated by the Referee are as follows:

"Upon the basis of the evidence in the record the Referee makes the following findings of fact:

"1. Claimant was born January 25, 1886. He lived at home on a farm with his parents until he graduated from college in 1913. While attending college he spent his vacations on the farm. In 1914 claimant bought some farm land. He has bought other farm land in succeeding years and has been the owner of some farm land ever since 1914. At the present time and in 1956 he owned two farms in Ringgold County, Iowa, one farm having 219 acres and one farm 160 acres. The farms are located approximately 400 miles from claimant's home in Webster Groves, Missouri. Claimant visits his

Council proceeded to make its own inferences and conclusions from the evidentiary facts as stated by the Referee.

In so doing the Appeals Council noted that Section 211(a) (1) supra, provides that rental from farm land and from

farms sometimes once during a year, sometimes oftener, depending upon the need.

"2. Claimant subscribes for several farm magazines and is on the mailing list for Iowa crop and weather reports sent by the Weather Bureau once a week. They occasionally inquire of him if he wishes to remain on their mailing list and he always asks to remain on their list. Claimant has from time to time written to agricultural colleges inquiring about the advisability of growing certain kinds of crops such as sweet clover, milo, and a crop which was known to him as an oil bean, understood by the college probably to be a castor bean.

"3. Each year claimant prepares a map or chart of each of his farms on which he designates the places where fences are to be moved or remain, what is to be planted in each field, the terraces, places where the ground should be undisturbed so as not to contribute to washout.

"4. Claimant does have the assistance of Rowe Denney. Rowe Denney is a farmer and has been a member of the Board of Supervisors of his County. He is acquainted throughout the County. He observes claimant's farms and keeps him informed. Claimant's tenants communicate with Mr. Denney if they wish anything done by the claimant and Mr. Denney then communicates with claimant either by telephone or by letter. Tenants occasionally write to claimant direct but ordinarily they communicate with Mr. Denney. Mr. Denney has no authority to make any decisions for claimant and if the tenants ask him anything he gets in touch with the claimant before answering them. Claimant pays to Mr. Denney for his compensation for his services 10 percent of the sale price of his share of the crops and 10 percent of the cash rent. Claimant always selects his own tenants.

"5. Harold Middleton who was formerly a tenant in one of the claimant's farms wished to have the benefits of a G.I. training program and for that purpose requested claimant to sign a lease for the period from March 1, 1955, to March 1, 1956, which lease would contain the following provision:

" 'The trainee shall have the sole managerial control of the facilities. Sole managerial control is interpreted to mean that the trainee must be able to make decisions concerning the farm operations and must have authority to put into practice the recommendations of the instructor. The landlord or partner shall have such rights as are set forth in this lease.'

Claimant refused to sign such a lease. Claimant later signed another formal lease on Form FHA–81 of the U. S. Department of Agriculture, Farmers Home Administration, which lease did not contain any provision similar to the one he had objected to. The latter lease was for the term March 1, 1955, to March 1, 1956, with the provision that it would continue in effect from year to year thereafter until written notice of termination was given by either party to the other at least four months before the expiration of the term. Mr. Middleton continued to be claimant's tenant through the year 1956. The lease was terminated by claimant because Mr. Middleton was working on a construction job and in claimant's opinion was not putting in sufficient time on the farm.

"6. In addition to receiving shares of the crops, claimant received cash rent from each of his tenants for pasture and buildings.

"7. The cash expenses paid by claimant and his tenants, including all cash expenditures by his tenants for such items as seed, expense of combining and bailing, and including all expenditures by claimant for such purchases as seed, combining, bailing, and lime, but not including such expenses as insurance, taxes, or building repairs were as follows:

MATERIAL PARTICIPATION.

| Year | Landlord | Tenant | Total | Landlord % |
|------|----------|--------|-------|------------|
| 1954 | $593.46 | $386.57 | $ 980.03 | 60.5 |
| 1955 | 535.65 | 299.11 | 834.76 | 64.1 |
| 1956 | 632.08 | 389.41 | 1,021.49 | 61.8 |
| 1957 | 625.94 | 351.40 | 977.34 | 64.4 |
| 1958 | 572.41 | 296.60 | 869.01 | 65.8 |

"8. Claimant's net profits from both his farms for the year 1956 amounted to $2,378.85. His net profit from his share of crops grown on his land was $2,645.27. (sic)

"9. Claimant mails direct to each of his tenants the map or chart which he has prepared. Claimant also makes a copy of the map which he keeps for his own records.

"10. Claimant specifies the price at which his share of each crop is to be sold, but leaves it to Mr. Denney to find a purchaser or purchasers and make the actual sale.

"11. As recently as the school year 1945–46 claimant attended a course of instruction in Farm Management at Washington University in St. Louis."

personal property leased with the land were not applicable as self-employment income, unless it is established that:

"(A) Such income is derived under an *arrangement, between the owner* or tenant and another individual, which provides that such other individual shall produce agricultural * * * commodities (including livestock * * *) on such land, *and that there shall be material participation by the owner or tenant in the production or the management of the production of such agricultural * * * commodities,* and

"(B) there is material participation by the owner or tenant with respect to any such agricultural * * commodity." (Emphases are those of the Appeals Council.)

In connection with its interpretation of the "material participation" provision contained in Section 211(a) (1) supra, the Appeals Council noted that Senate Report No. 2133 (U.S.Cong. & Adm. News, 84 Cong.2d Session 1956, p. 3915) in pertinent part states:

"Under both the committee-approved bill and the House bill, the present exclusion from self-employment earnings of rentals from real estate would not apply to income derived by an owner or tenant of a farm from its operation by another individual if there is material participation by the owner or tenant in the farm production under an arrangement which provides for such participation. The bill thus would extend coverage under old-age and survivors insurance to certain farmers who, though not covered under the present law, have income *from work and therefore are exposed to the type of income loss against which the program is designed to afford protection.*

"Under this amendment it is contemplated that the owner or tenant of land which is used in connection with the production of agricultural or horticultural commodities *must participate to a material degree in the management decisions or physical work relating to such production* in order for the income derived therefrom to be classified as 'net earnings from self-employment.' The committee is of the opinion that in any case in which the owner or tenant establishes the fact that he *periodically advises or consults with such other individual as to the production of the commodities and also establishes* the fact that he *periodically inspects the production activities* on the land he will have presented strong evidence of the existence of the degree of participation contemplated by the amendment.

"If the owner or tenant also establishes the fact that he *furnished a substantial portion of the machinery, implements, and livestock used in the production of the commodies or that he furnishes, or advances or assumes financial responsibility for, a substantial part of the expense (other than labor expense) involved in the production of the commodities, the committee feels that he will have established the existence of the degree of participation contemplated by the amendment."* (Emphases by Appeals Council.)

After taking notice of that legislative history, the Appeals Council proceeded to apply the concrete factual situation in the case at bar to the general statutory provisions of Section 211(a) (1), as follows:

"In the application of the above legislation to the facts as stated by the referee, it can be readily seen that the claimant's activities are primarily identified with his investment, rather than with the production. The Appeals Council is of the opinion that claimant's activities, set forth in paragraphs numbered one through eleven of the referee's decision, primarily involve manage-

ment decisions relating to the improvement and maintenance of the farms rather than to the production. The claimant visits the farms approximately once each year, provides for the tenants a map and chart of the various tracts and the crops to be planted, the position and removal of fences in determining such tracts, the location of terraces and exclusion of certain land to minimize erosion, the engagement of the services of Mr. Denney who relays certain information and requests by the tenants—which according to the record reflect matters primarily involving repair, maintenance and improvement—and collects and utilizes information from the universities and colleges, admittedly beneficial, but not directly related to the production. All of these, including the charts, provide a means through which the claimant is able to practice up to date methods, which over the years, will result in an investment accrual. However, the landlord-claimant is merely exercising a right that flows from an ordinary farm lease in the selection of plots and crops, the designation of land to be untilled, and from general activity which by the long-range view enhances his investment. The management making decisions that must be established to constitute material participation are much more closely related to the actual operation of the farm in connection with the actual production of the commodities than is existent here.

"The Appeals Council finds that the claimant did not materially participate in the production or management of production of agricultural commodities under an arrangement which provided for such participation. Accordingly, the Appeals Council finds that the claimant does not have self-employment income from his alleged material participation in connection with his farms, such income being excepted under section 211(a)(1) of the Act as rentals from real estate. The claimant is therefore not entitled to an increase in his benefits on the basis of his application filed July 31, 1957, or to the establishment of any self-employment income on the basis of alleged material participation."

Section 205(g) of the Social Security Act provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Such finality attaches not only to the findings of the Secretary "but also to the inferences and conclusions drawn from the facts." Sherrick v. Ribicoff, 300 F.2d 494 (7 Cir. 1962). Neither the District Court in the first instance nor this Court on appeal is free to substitute its findings of fact or inferences therefrom for that of the Secretary. Gainey v. Flemming, 279 F.2d 56 (10 Cir. 1960). And it should be kept in mind that "where either one of two inferences may reasonably be drawn from undisputed facts, the inference adopted by the (Secretary) whose duty it is to draw the inference from which (he) is to formulate (his) judgment may not be disturbed." (Par. added.) (Northwest Bancorporation v. Board of Governors of the Federal Reserve System, 303 F.2d 832 (8 Cir. 1962). Where an administrative agency is charged with applying general statutory language to a concrete factual situation, the courts will not disturb the conclusion reached by the agency if there is a rational basis in the record therefor. Unemployment Compensation Commission v. Aragan, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946).

"So long as there is * * * (evidence) in the record for the judgment of the * * * (fact finding) body it must stand. * * The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Rochester Telephone Corp. v. United States, 307 U.S. 125, 145, 59 S.Ct. 754, 764, 83 L.Ed. 1147 (1939).

In the case at bar the power of decision respecting claims for old-age benefits under the Social Security Act is primarily the responsibility of the Secretary, in this instance acting through the Appeals Council. A Referee's findings of fact and conclusions thereon are in essence merely a recommendation (5 U.S. C.A. § 1007(a)). The Secretary is not required to accept but is free to substitute his own good judgment on the ultimate facts found, for that of the Referee. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456 (1951).

■■■ So far as the Referee's Report is to be considered in this appeal, it is merely a document in the record which, like any other factual matter, must be taken into consideration in resolution of the question of substantiality of the evidence to support the final decision of the Secretary. Universal Camera Corp. v. N. L. R. B., supra; Wilson & Company v. N. L. R. B., 123 F.2d 411, 418 (8 Cir. 1941). As to that part of the Referee's Report adopted by the Appeals Council, it is to be treated as ultimate, basic facts found, on which such final conclusion is premised. Evidentiary facts stated in the Appeals Council's Report, indicating in part the mental process by which its final conclusion was reached are not decisional. There is no requirement that the Appeals Council specify the weight given to any item of evidence or fact, or to disclose its whole mental operation by which its decision was reached. Cf. Baltimore & Ohio R. Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 803, 80 L.Ed. 1209 (1936); United States v. Pierce Auto Freight Lines, 327 U.S. 515, 529, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Davis, Vol. 2, Administrative Law, Section 10.04, page 18. The decision of this Court depends upon whether, from the facts found, the final conclusion reached by the Appeals Council can legally and logically be sustained. That

determination cannot be set aside. "Even though, as appellants seem to argue, the evidence may lend itself to support a different inference, we are without authority to substitute our judgment for that of the Secretary * * *." [4] Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 307, 57 S. Ct. 478, 482, 81 L.Ed. 659 (1936).

We have carefully reviewed the record on which the Appeals Council rendered its final decision in the case at bar. It is thereby established that the facts as stated by the Referee (footnote 3, supra) and adopted by the Appeals Council are substantially sustained by the evidence. Seemingly, it is because the Appeals Council referred only to some such facts in the concoction of its decision that appellant asserts the same "should be reversed because it" is thereby revealed that it "was based on a fallacy of reasoning." Such fallacy, as appellant views it, is that the final decision of the Appeals Council is premised in reasoning "that those acts which operate toward the improvement and maintenance of the soil of a farm cannot likewise be acts which enhance the production of the crops on the farm." The ultimate decision of the Appeals Council in the case at bar is not so premised. Its decision is that under the facts as found by the Referee it is thereby established that appellant "did not materially participate in the production or management of production of agricultural commodities" on his farm "under an arrangement which provided for such production." That such conclusion is a reasonably proper one to be gleaned from the record, is established by a consideration of the following matter.

At no place in the statement of facts as found by the Referee is there a specific finding of any "arrangement" between appellant and the tenant existing in respect to his farm in the year 1956, which provided for "material participation" by

---

4. "Hypercritical exactions as to findings can(not) provide a handy but almost invisible glideway enabling courts to pass 'from the narrow confines of law into the more spacious domain of policy.'" S. E. C. v. Chenery Corp., 318 U.S. 80, 99, 63 S.Ct. 454, 464, 87 L.Ed. 626 (1943)—dissenting opinion.

appellant "in the production or management of production of agricultural commodities" on his farm. The written lease appellant had with his tenant in 1956 was a Standard Form FHA–81 Lease. It contained no agreement for "material participation" by appellant relating to "production" of crops grown on his farms. It is not necessary that such an agreement be in writing. It may be an oral one. But, aside from appellant's statement that he had an understanding with his tenant in 1956 to that effect, there is no other testimony in this record from which that matter is established as a fact. There is other evidence *contra*. Appellant's tenant for that year was an experienced farmer. A statement made by the wife of that tenant, appearing in the record, is to the effect that the tenant did not seek, nor did appellant give, any advice, or consult with that tenant as to the actual farm operations in 1956.[5] A reasonable inference from that and other testimony is that after the "share crop" lease was executed, if the tenant followed the "crop map" prepared by appellant for that year, the tenant was then on his own so far as all other operations of the farm were performed.

The Referee found in 1956 appellant did prepare a map or chart of his farms designating what crops were to be planted where, what fences were to be removed or were to remain, and what ground should be undisturbed so as not to contribute to washouts. The only other evidence establishing appellant's connections with his farms in that year

is that he employed his brother-in-law, a Mr. Denney, who admittedly was not a farm manager, to look over his farms from time to time and communicate with appellant as to what he observed. Mr. Denney was merely a medium of communication between appellant and the tenant on his farm. Mr. Denney's testimony is: "I don't tell the tenants how to farm. If the tenants are in need of anything, they notify me and I notify Ivan (appellant) and wait for his instructions." When contacted by a field representative of the Bureau, Mr. Denney stated he does not inform the tenant in any way, through advice or consultation, does no physical work to assist the tenant, and does not inspect the tenant's production activities, and that the only time the tenants contacted him was when they were in need of items to be provided by the landlord as, for example, repairs needed for the houses or fences or other farm property. In a questionnaire filed by appellant he affirmed that, "Mr. Denney (was hired) to look after (my) interests and to see that the work is carried on as I direct it to be done. He (Mr. Denney) does not make any management decisions and renders no service in an advisory capacity to the tenants. He does report regularly to me either by phone or letter, if something needs my attention." [6]

From the above facts and our review of the record as a whole, we believe there was substantial evidence from which the Secretary could reasonably conclude that appellant did not in 1956 have an "arrangement" whereby he

5. After the effective date of the Amendment to § 211(a) (1), leases executed by appellant in 1957 and subsequent years provide that he was to have the "complete managerial policy of the crop-share-lease," and that the tenant had "the right to consult with and make suggestions to" appellant relative thereto.

6. In light of that situation and other facts appearing in the record here, we do not have before us *vicarious* material participation by a landowner, as considered in Henderson v. Flemming, 283 F.2d 882 (Cir. 5); and Harper v. Flemming, 288 F.

2d 61 (Cir. 4). We consider the factual situation in those cases to be distinguishable from those appearing in the case at bar.

Appellant did not undertake to establish what subjects or topics were relayed to him by Mr. Denney, nor the nature of any advice that he says he passed to the tenants through Mr. Denney in 1956. All that can be gleaned from the instant record is that they related to repairs needed and directed to be made to fixed improvements. Appellant did not provide any machinery or animals for work done on the farms.

would "periodically" *advise with the tenant* on his farm, or "periodically" *inspect production activities* thereon; nor did he, with any degree of regularity or frequency "take any important part in making management decisions substantially contributing" to the promotion of production on his farms. Manifestly, the making of a farm plan at the beginning of the season is not sufficient in itself to establish the "periodical" . . "material participation" which the Congress had in mind before income derived from farm operations should be considered as self-employment income. "Periodically" suggests some fixedness; it implies regular intervals, definitely prescribed to some time schedule. It is something more than "intermittent" or once a year. (Cf. Webster's New International Dictionary, Second Edition.)

> "Mere ownership of property let out to another on some basis by which the amount payable for use (rent) might come from crops produced was not an activity which Congress regarded as an employment or as generating income from employment." Henderson v. Flemming, 283 F.2d 882, 888 (5 Cir. 1960).

The Act requires something more than the letting of farm land on a share-crop basis and the payment of part of the seed and fertilizer for which the owner receives a portion of the crops produced by his tenant farmer. It is common knowledge that throughout the United States farm lands have been and are now leased where the landowner pays a part of the seed and fertilizer and receives a portion of the products as payment for rent, while the tenant performs the labor. From the legislative history of Section 211(a) (1) supra, it seems obvious that the Congress has knowledge that such common agreements were not intended to be within the ambit of Section 211(a) (1) supra. That much is clear from the requirement that there be "material participation by the owner * * * in the production or management of the production" and an "ar-

rangement which provided for such participation" before "self-employment" income derived from farm lands can be counted in granting Social Security benefits under the Act.

In light of the specific provisions and legislative history of Section 211(a) (1) supra, it is clear that whether there is "material participation" as therein provided is a factual determination that can only be made on a case-to-case consideration. We cannot say that the factual situation here considered by the Secretary results in an erroneous application of evidentiary facts to a proper interpretation of Section 211(a) (1) of the Act supra as appellant contends.

The judgment appealed from is, therefore, affirmed.