Ivan M. HOFFMAN, Plaintiff,

v.

Anthony CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

No. 64 C 321(1).

United States District Court
E. D. Missouri, E. D.

Oct. 5, 1965.

Stemmler & Stemmler, St. Louis, Mo., for plaintiff.

Richard D. FitzGibbon, Jr., U. S. Atty., Robert J. Koster, Asst. U. S. Atty., St. Louis, Mo., for defendant.

HARPER, Chief Judge.

This is a proceeding under the Social Security Act, as amended, 42 U.S.C.A. § 405(g), for judicial review of a final decision of the Secretary of Health, Education & Welfare. The matter is before the court on both plaintiff's and defendant's motions for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure.

This court has jurisdiction because this is a case involving a claim under 42 U.S.C.A. § 401, review of which is provided under 42 U.S.C.A. § 405(g) if commenced within sixty days after an adverse decision of the Secretary of Health, Education & Welfare.

Plaintiff, Ivan M. Hoffman, was born on January 25, 1886, and is fully insured under the provisions of the Social Security Act. He has been receiving benefits on the basis of reported wages of employment for others. Plaintiff also reported earnings from self-employment based on his alleged material participation in the management of the production of agricultural commodities on two farms which he owns. If approved, he would be entitled to an increase in benefits based on this self-employment income.

Plaintiff first sought a determination based on the year 1956. After a hearing and determination in his favor the plaintiff was reversed by the Appeals Council of the Social Security Administration. Plaintiff then commenced a civil action in the United States District Court for the Eastern District of Missouri, which upheld the decision of the Appeals Council. This determination was appealed to the Court of Appeals, which affirmed the decision of the District Court on June 30, 1962 (305 F.2d 1).

Plaintiff meanwhile was proceeding with his claim for 1957. After being notified that his self-employment earnings for 1957 had been adjusted to none, he requested a reconsideration. The reconsideration was not decided in his favor and thereafter he requested a hearing on January 29, 1964.

On April 3, 1964, the Hearing Examiner made his Findings of Facts, set out at pages 17 to 22 inclusive of the transcript which are treated as if a part of this memorandum but not copied herein.

Based on these Findings of Facts the Hearing Examiner concluded that during the year 1957 the plaintiff did not materially participate in the production or the management of the production of agricultural commodities upon his farms and that, therefore, the plaintiff did not have self-employment income in 1957.

On April 3, 1964, plaintiff filed a motion for revision of the Hearing Examiner's decision, but this was overruled on June 1, 1964. Plaintiff then filed a Request for Review of the Hearing Examiner's action by the Appeals Council of the Social Security Administration. The Appeals Council on July 1, 1964, denied

the request and stated: "The Hearing Examiner's decision stands as the final administrative decision on your claim."

The issue in this case is whether the plaintiff is entitled to a recomputation of his old-age insurance benefits because of self-employment income earned in 1957. In order to qualify, as provided by 42 U.S.C.A. § 411, the plaintiff must have materially participated in the production or the management of the production of agricultural commodities on his two farms four hundred miles away.

42 U.S.C.A. § 405(g) provides:

"* * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. * * *"

The Eighth Circuit Court of Appeals in discussing another portion of Section 405(g) has said:

"The Secretary's findings of fact and the reasonable inferences drawn from them are conclusive if they are supported by substantial evidence. The statute, § 205(g), 42 USCA 405(g), is specific. This is the limitation of judicial review of the Secretary's decision." Celebrezze v. Bolas, 316 F.2d 498 (1963).

The plaintiff claims that in 1957 he had "self-employment income" as provided by 42 U.S.C.A. § 411(b), which provides:

"The term 'self-employment income' means the net earnings from self-employment derived by an individual * * * during any taxable year * * *."

The term "net earnings from self-employment," used in the above quoted section, is set forth in § 411(a) as follows:

"(a) The term 'net earnings from self-employment' means the gross income, * * * except that in computing such gross income * *

"(1) There shall be excluded rentals from real estate and from personal property leased with the real estate (including such rentals paid in crop shares) * * *."

A provision was added to § 411(a) (1), effective on the taxable years ending after 1955. This clause modifies the above quoted provision as follows:

"* * * the preceding provisions of this paragraph shall not apply to any income derived by the owner or tenant of land if (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural * * * commodities * * * on such land, and that there shall be material participation by the owner or tenant in the production or the management of the production of such agricultural * * * commodities, and (B) there is material participation by the owner or tenant with respect to any such agricultural * * * commodity * * *."

The meaning to be ascribed to the term "material participation" is clearly indicated by the record of the legislative history, not only of this specific portion of the Act but of the section in its entirety.

Prior to 1950, the Act provided no coverage to self-employed individuals. In 1950, the Act was amended to cover self-employed persons, and to determine their credible earnings the definition of "net earnings from self-employment" was added to the Act. At the beginning of this extension of coverage Congress provided, and has consistently retained, provisions whereby certain types of income were not to be included in a self-employed person's net earnings. These exclusions, all found in 42 U.S.C.A. § 411, are generally: (A) Rentals from real estate, (B) dividends and interest, and (C) items which partake of the nature of capital gains.

In enacting the 1956 amendment, Congress recognized that some farm owners

who rent their land to a tenant actually perform services which contribute to the production of the crops. Therefore, their income, although rental income in the accepted sense of that term, may be, in significant part, the fruit of their own labor for which earnings credit should be given. The report of the Senate Committee which approved the amendment (Senate Report No. 2133, 84th Congress, 2nd Session, 1956) states at page 8:

"Under both the committee-approved bill and the House bill, the present exclusion from self-employment earnings of rentals from real estate would not apply to income derived by an owner or tenant of a farm from its operation by another individual if there is material participation by the owner or tenant in the farm production under an agreement which provides for such participation. The bill thus would extend coverage under old-age survivors insurance to certain farmers who, though not covered under present law, have income from work and therefore are exposed to the type of income loss against which the program is designed to afford protection." U.S.Code Congressional and Administrative News, 1956, p. 3884.

■ It is, therefore, clear, not only from the language of the amendment itself, but from its legislative history and the cases interpreting the amended Act, that in order to materially participate in the production or management of production of agricultural commodities, the owner must contribute more than would be dictated by the normal self-interest of a landlord in preserving the value of his investment and assuring the payment of the highest possible rental. Here the landlord would probably show a greater interest in the soil, crops, etc., because his rent is based on what the tenant produces and also because, if misused, the land could greatly be reduced in value.

The plaintiff refused to sign a lease for Harold Middleton which gave the tenant sole managerial control of the farm, plaintiff to decide what crops to plant and where, and to have the soil tested, fields leveled, terraced, etc. Even people who have never farmed are aware that things which are rented tend to be misused, worn out and not properly cared for if there are no rules laid out and if there is no supervision.

Likewise it is no mystery that farm land which is not properly terraced, fertilized, plowed, crops rotated, etc., will wash away, wear out and become, to say the least, much less valuable, and perhaps even almost worthless. Proper tenant selection helps, but a tenant can move on to another farm or to a job in a town or city, while the landowner is left with the property. A person who runs a farm is most likely to be very concerned with its use and upkeep.

It is not intended to convey the impression that all tenants are going to farm so recklessly that they will destroy the landlord's fields and then move on, but suffice to say, few, if any, would fail to supervise his tenants properly.

It should be pointed out that since the decision rendered against him on his 1956 earnings the plaintiff has acquired more expertise as to what is necessary to establish material participation, and he has proceeded to tailor the record to meet what he considers to be the requirements of the Court of Appeals.

■ A review of the entire record reveals that the Secretary's decision is supported by substantial evidence and that the plaintiff did not materially participate in the production or the management of the production of commodities grown on his farms. The court in Foster v. Celebrezze, 313 F.2d 604, at 606 (8 Cir.), said:

"* * * The findings of the referee, which become the findings of the Secretary upon denial of request for review, cannot be upset if supported by substantial evidence."

In Celebrezze v. Benson, 314 F.2d 219, l. c. 222 (1963), the Eighth Circuit quotes from Conley v. Ribicoff, 294 F.2d 190 (9th Cir. 1961) as follows:

"However, the 1956 amendment does not demand that the owner settle all the problems or even all the

important problems that arise in connection with the operation of the farm, for the word 'participation' denotes *joint activity in the entire enterprise* and its modifier 'material' only requires that *the activity be of substantial value or importance."* (Emphasis added.)

We feel that the evidence supports the Secretary's finding that there was no joint activity in the entire enterprise of substantial value or importance.

The plaintiff entered into written leases with his tenants for the calendar year 1957 rather than continue with his prior practice of oral leases, but by his actual activities he did not materially participate. The Hearing Examiner found the changes insignificant:

"There is substantial difference in the findings with respect to the 'arrangement' between claimant and each of his renters. The differences in fact as found with respect to claimant's *actual activities* are somewhat less significant." (Tr. 26.) (Emphasis added.)

Plaintiff admits that he spent only *one week* at the farms during the entire year and he also admits that his home is four hundred miles away, in Webster Groves, Missouri. Since he is so far away plaintiff alleges that he materially participated through an arrangement with his brother-in-law, Rowe Denney.

Rowe Denney receives ten percent of the sale price of plaintiff's share of the crops and ten percent of the rent paid by the tenants. Plaintiff has admitted that Denney's main function is to sell his share of the crops. It is also interesting to note that Denney received $350.00 for the work done for the plaintiff in 1957. Denney was at this time also farming a large farm of his own.

Rowe Denney described his role in a statement made in his own handwriting in October, 1957, as follows (Tr. 192):

"I am not a farm manager, but I do look after the two farms owned by my brother-in-law, Ivan M. Hoffman. I have done this for him for approximately twenty years. He pays me ten percent of the gross of his share.

"Ivan comes up once a year for about a week. He goes all over the farms, talks with the tenants and leaves instructions that are pertinent with the tenants and me. He sends a diagram of each farm once a year showing the way he wants each field planted. I send a report to him as each crop is harvested, telling him what his share is and asking how he wants to dispose of it.

"I don't tell the tenants how to farm. If the tenants are in need of anything they notify me and I notify Ivan and wait for his instructions."

This statement was made immediately after the 1957 growing season when circumstances were still fresh and not six or seven years later.

A field representative of the Social Security Administration, Robert L. Pelke, talked to Rowe Denney on November 28, 1957, and reported the following conversation (Tr. 190):

"Mr. Denney does not profess to be a farm manager in any sense of the word. He states that the tenants independently operate all their own farms. He states that he does not inform the tenant in any way through advice or consultation, does no physical work to assist the tenant, and does not inspect the tenants' production activities. He states that the only time the tenants contact him is when they are in need in items to be provided by the landlord. He gave as an example: One tenant called him and told him the plaster had fallen down in the house and wanted to know what to do about it. He stated that he advised Hoffman, and Hoffman told him to have the room plastered. He says this is true as far as building repair, fence repair and farm property maintenance. He states that Hoffman himself lays out the farms as to acreage and crop rotation and sends a map of the farm to him to give the tenants each year."

Mrs. Schuster, the wife of one of plaintiff's tenants, informed the Social Security Administration representative that Mr. Hoffman visited the farm once a year and provided them with a crop map, but otherwise did not give advice or consult with her husband on how to farm.

Mr. and Mrs. Schuster were plaintiff's tenants from 1945 to 1962, and in a statement dated February 10, 1963, they said:

"Ivan's activities in 1957 in connection with the farm were pretty much like what they were in other years."

There have been other written statements made by these witnesses which are more recent, and in them parts of earlier statements are changed and contradicted, but even if the evidence is viewed in its most favorable light the court still fails to see any material participation by the plaintiff in the management of production or the production of commodities on his farms.

The facts are substantially the same as in the prior case of Hoffman v. Ribicoff, 305 F.2d 1 (1962). In that case, the Eighth Circuit Court of Appeals held that Hoffman, the present plaintiff here, did not have self-employment income derived from farming in 1956.

Plaintiff now asks us to reconsider the year 1957 but he shows no real difference for that year except for a written agreement instead of an oral one. He states that he just had an attorney put into writing what his past practices were.

There is no denying that the plaintiff was vitally interested in the two farms he owned, but almost all people who own property are very interested in it. The decisions made by the plaintiff involved management decisions relating to the improvement and maintenance of the farms and not to the production of commodities.

As was said in Hoffman v. Ribicoff, supra, l. c. 6:

"The claimant visits the farms approximately once each year, provides for the tenants a map and chart of the various tracts and the crops to be planted, the position and removal of fences in determining such tracts, the location of terraces and exclusion of certain land to minimize erosion, the engagement of the services of Mr. Denney who relays certain information and requests by the tenants—which according to the record reflect matters primarily involving repair, maintenance and improvement—and collects and utilizes information from the universities and colleges, admittedly beneficial, but not directly related to the production. All of these, including the charts, provide a means through which the claimant is able to practice up to date methods, which over the years, will result in an investment accrual. However, the landlord-claimant is merely exercising a right that flows from an ordinary farm lease in the selection of plots and crops, the designation of land to be untilled, and from general activity which by the long-range view enhances his investment. The management making decisions that must be established to constitute material participation are much more closely related to the actual operation of the farm in connection with the actual production of the commodities than is existent here."

The record contains substantial evidence from which the Secretary could properly conclude that the plaintiff did not materially participate in the production or the management of the production of agricultural commodities upon the two farms he owned during the year 1957 and that the Secretary was correct in his determination that Hoffman had no self-employment income for that year.

Accordingly, the plaintiff's motion for summary judgment is overruled.

The defendant's motion for summary judgment is sustained and the clerk will prepare and enter the proper order to that effect.