**Ivan M. HOFFMAN, Appellant,**

**v.**

**John W. GARDNER, Secretary of Health, Education and Welfare, Respondent.**

**No. 18221.**

United States Court of Appeals
Eighth Circuit.

Dec. 20, 1966.

James A. Stemmler, of Stemmler & Stemmler, St. Louis, Mo., for appellant and filed printed brief.

Robert J. Koster, Asst. U. S. Atty., St. Louis, Mo. (at that time) for appellee.

Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., was with him on the brief.

Before VOGEL, Chief Judge, MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Claimant, Ivan M. Hoffman, a resident of Webster Groves, Missouri, sought social security benefits based upon self-employment earnings by reason of his own and his agent's material participation in the production and management of production of farm commodities upon two farms he owned in Ringgold County, Iowa. The year involved is 1957 and the arrangements for operation of the two farms were in the form of written agreements with tenants, giving claimant complete managerial control over said farms.

The local office of the Social Security Administration denied the claim and appeal was processed to the Hearing Examiner, who also decided adversely to claimant. The Appeals Council thereafter denied formal review and the Hearing Examiner's decision, therefore, stands as the final decision of the Secretary.

Claimant timely filed an action in the United States District Court for the Eastern District of Missouri. Both parties filed motions for summary judgment. The District Court sustained the Secretary's motion, entering summary judgment and this appeal lies from that judgment. Jurisdiction is established by 42 U.S.C.A. § 405(g), 42 F.C.A. § 405(g) and 28 U.S.C.A. § 1291, 28 F.C.A. § 1291. We reverse.

The sole question for our determination is whether under the admitted facts claimant is entitled to benefits by reason of earnings from self-employment under the applicable statute.[1] The Hearing Examiner's eighteen findings of fact

---

1. 42 U.S.C.A. § 411(a) (1) provides:
   "(1) There shall be excluded rentals from real estate and from personal property leased with the real estate (including such rentals paid in crop shares), together with the deductions attributable thereto, unless such rentals are received in the course of a trade or business as a real estate dealer; except that the preceding provisions of this paragraph shall

became the Secretary's findings and, additionally, the Secretary pleaded that the same were supported by substantial evidence and conclusive. We find it unnecessary to set forth in this opinion all of the numerous findings, but will paraphrase some and quote the ones we think vital to our conclusion.

Claimant was born on January 25, 1886 and lived with his parents on a farm until his graduation from college in 1913. The year following his graduation, he purchased a farm and has owned and been interested in farm land ever since. For some twenty years he had his brother-in-law, Rowe Denney, a farmer who lives in the vicinity of the Iowa farms, look after them by keeping in touch with the tenants and keeping claimant advised. Claimant compensated Denney for such services with a percentage of his income from the farms, In 1957 claimant entered into identical written agreements with two tenants for the farming of the Iowa farms. These agreements gave claimant complete managerial control, subject only to the right of the tenants to make suggestions. Under the agreements, claimant paid for all the grass seed, one-half of the corn seed, one-half of the hay bailing expense and all of the fertilizer expense. The straw, threshed hay and stalk field were to be fed on the farm. Claimant was not required to pay for the oats seed or threshing expense. The agreements further provided that claimant was to designate the place and time the crops were to be planted and when they were to be cultivated, harvested and divided. He was also responsible for designating when the crops were to be sprayed and the manner in which they were to be tended. The Hearing Examiner found the claimant performed all the acts called for in the written agreements.[2]

Claimant kept charts on his farms showing the liming history and other crop information, and each year sent a map to his tenants designating what to plant, where to fertilize, the type of fertilizer, instructions on fencing and terracing, etc. Claimant consulted periodically not only with Denney but directly with his tenants by telephone and letter, and in most such instances, advised and instructed them concerning the crops. Further, claimant and his daughter spent a week on the farms inspecting the growing activities and walked over the fields with Denney and the tenants, discussing the performance of the crops, soil and farm practices and giving advice on these matters. Denney inspected the condition of the crops on both farms two to four times a month during the growing season and kept in communication with claimant, relaying claimant's instructions and advice to the tenants. Because Findings of Fact Nos. 9 and 10 go to the heart of this case, we set them forth:

"9. Claimant made important decisions concerning the production activities on the farms. These decisions included decisions on what crops were to be planted, when and where they were to be planted, on the type of seed, on changes in the system of crop rotation, on the type of plowing (straight or contour), on the price and time at which to sell or seal crops, on changes in crop plans due to changes in weather conditions, on leveling of fields to make land more productive, on chang-

not apply to any income derived by the owner or tenant of land if (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural or horticultural commodities (including livestock, bees, poultry, and fur-bearing animals and wildlife) on such land, and that there shall be material participation by the owner or tenant in the production or the management of the production of

such agricultural or horticultural commodities, and (B) there is material participation by the owner or tenant with respect to any such agricultural or horticultural commodity."

2. Finding of Fact No. 5:
"5. Claimant performed all of the acts which the written agreements called upon him to perform, which acts were performed through a combination of his own efforts and those of his agent, Rowe Denney."

ing of fences to get better land into production and poorer land into pasture, on terracing, grassing of waterways, blocking of little ditches or washes and general soil conservation, on when to make soil tests, on spraying of crops and insect control, on weed control, on whether to make hay of oats and clover or plow them under, on participation in government programs such as the soil bank and on the termination or continuance of the landlord-tenant relationship.

"Claimant would seldom make decisions without first consulting with the particular farmer farming the place either by direct contact himself or through Denney. Claimant would also usually fully inform himself on the particular problem through farm periodicals or letters to agriculture colleges or both before making the decision if there was any particular change involved.

"10. Some of the decisions which claimant made were on new farming techniques the institution of which paid off in increased production and bigger profits. These decisions were not always made in one year but sometimes by reason of study over a period of two or three years. Some of such decisions had particular reference to 1957, in that either the program was instituted in 1957, or the decision was being made in 1957 such as the following: Claimant decided that with proper fertilization he could alternate corn and beans, both money crops, without the necessity of the five-year rotation plan which would include a couple of years of keeping it in meadow or in oats, clover or alfalfa crop, which does not pay much. Claimant decided that he could plant the ridges and bottoms in soybeans, a good money crop, for several years in succession. Claimant tried a new type of mammoth red clover which made a bumper crop and also improved the money crop on the land next year by as much as one-third. Certain terracing and soil conservation projects were accomplished by claimant which improved the crops in the bottom land. Claimant experimented with a new type of fertilizer which resulted in a big increase in the corn crop. Claimant, after considerable figuring, decided that it would be more profitable not to put certain land in the soil bank program.

"Claimant kept particularly close track of any new production technique or crop he tried, and if it did not perform as planned, he attempted to find out why."

Claimant's net profits from both his farms for the year 1957 amounted to $2,927.96. For that year there was a total expenditure on the two farms for such items as seed, combining, baling and lime the sum of $977.34 of which amount claimant paid $625.94 or 64.4%.

From the findings of fact, it clearly appears that claimant not only materially participated in the production of the crops but also in the management of the production of the crops. He admittedly made important decisions concerning production of the crops, improved the money crops, and materially participated in the financing. In this setting, we can only surmise that the Secretary and the trial court were erroneously influenced by our former opinion in Hoffman v. Ribicoff, 305 F.2d 1 (8th Cir. 1962). That case involved the same claimant, the same farms and one of the same tenants, and we held upon the record there before us that the evidence justified the Secretary's conclusion adverse to claimant. But the record facts are materially different here. In the former case, there were no written agreements between claimant and his tenants designating claimant's managerial responsibilities or a finding that he performed all of such acts. The former case was presented by claimant without benefit of counsel and the record there was lacking in important detail and did not begin to approach the completeness of the record here as revealed by a comparison of the findings of fact. The conclusion of the Secretary there, as here, was that the activities of claimant related primarily to improvement and maintenance

of the farms' fertility and thus the improvement of his investment as opposed to material participation in the production and management of production of the crops. Such a conclusion is not compatible with Findings Nos. 9 and 10 set forth above. In the former case, Judge Ridge, author of the opinion, made note that the issue in this sort of case must be determined on a case-to-case basis, saying in his concluding paragraph:

"In light of the specific provisions and legislative history of Section 211 (a) (1) supra, it is clear that whether there is 'material participation' as therein provided is a factual determination that can only be made on a case-to-case consideration. We cannot say that the factual situation here considered by the Secretary results in an erroneous application of evidentiary facts to a proper interpretation of Section 211(a) (1) of the Act supra as appellant contends." 305 F.2d at page 9.

The same author in Celebrezze v. Wifstad, 314 F.2d 208 (8th Cir. 1963), reiterated that cases of this kind can only be properly decided upon a case-to-case consideration and distinguished our former *Hoffman case,* supra, using the following language:

"The Secretary's singular reliance on our opinion in Hoffman v. Ribicoff, supra, to sustain such a denial is misplaced. The facts in the case at bar are clearly distinguishable from those found and the issues that existed in that opinion of ours. In the *Hoffman* case there was a specific finding that no arrangement existed at the critical time of Hoffman's qualification for old-age insurance benefits. There was also a specific finding that he did not, personally or vicariously, 'participate in the management of production' on his farm land. There was substantial evidence concerning both such findings and that is what was sustained by our review in that case." 314 F.2d at 218–219.

The same distinctions and others are equally valid here.

We also distinguished *Hoffman,* supra in Foster v. Celebrezze, 313 F.2d 604 (8th Cir. 1963). In *Foster,* we determined that the issue was a question of law relative to the meaning of the words "material participation" as used in the statute. We there also called attention to the general rule providing for a liberal interpretation of the Social Security Act, citing Harper v. Flemming, 288 F.2d 61 (4th Cir. 1961) and Henderson v. Flemming, 283 F.2d 882 (5th Cir. 1960). In order to "materially participate," the statute does not require a farm owner to settle all the problems, or even all the important problems in connection with the operation of a farm. Celebrezze v. Benson, 314 F.2d 219 (8th Cir. 1963); Conley v. Ribicoff, 294 F.2d 190 (9th Cir. 1961). Claimant's participation need only be of substantial value or importance. In his brief, the Secretary admits that the material participation requirement is not confined to personal activities of a landowner, but may be performed through an agent. The findings of fact seem to be conclusive that the claimant here made important decisions concerning the production activities on the farms, some of which resulted in increased production and greater profits. He improved the money crops and his experimentation with new types of fertilizer resulted in a large increase in the corn crop. His conservation projects also improved the crops in the bottom land. In fact, if this claimant did not materially participate within the meaning of the statute, it is difficult to conceive how a nonresident owner could possibly materially participate in the production or management of production of the commodities grown on a farm. It is true that claimant here did not actually visit the farms except for a week during the growing season, but one could hardly expect a person of his age to traipse between his home in Missouri and his farms in Iowa, a round trip distance of some eight hundred miles, when he could accomplish the same thing by letter and telephonic communication with his tenants and the employment of a farmer

brother-in-law who lived nearby and who actually visited the farms from two to four times a month during the growing season. His agent, Denney, reported the conditions he found to the claimant and carried claimant's messages and advice to the tenants. Claimant's farms were a constant topic of conversation in his household. He maintained charts on them and studied farm techniques, soil conditions and kept abreast of the weather conditions and completely directed the farming operations. About the only things he did not do were to personally set foot on the farms at frequent intervals and engage in the physical farming activities, neither of which is a requirement of the statute.

The only reasonable conclusion we can draw from the facts is that the claimant through his own activities, coupled with those of his agent, Denney, materially participated in the production and management of production of the crops on his farms.

The judgment is reversed.