Annie B. COLEGATE, Petitioner,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Respondent.

Civ. No. 6187.

United States District Court
S. D. Ohio, W. D.
Jan. 17, 1967.

Alfred Pfau, Cincinnati, Ohio, for petitioner.

Robert M. Draper, U. S. Atty., Cincinnati, Ohio, for respondent.

## MEMORANDUM OPINION

HOGAN, District Judge.

This is a proceeding under the Social Security Act as amended, 42 U.S.C.A. § 405(g), for judicial review of a "Final Decision" of the Secretary of Health, Education and Welfare. The decision under review denied the petitioner credit for certain income which she alleged she received from "material participation" in the production of crops produced on her farm in 1963 and 1964.

During those years the petitioner admittedly received certain income by reason of her ownership of and the operation of farm land near Harrison in Hamilton County, Ohio. She duly reported that income as "Social Security Income" (in the common parlance) for those years. The test is established in 42 U.S.C.A. § 411(a). In a nutshell, that section defines as eligible "Social Security Income" any income derived by the owner of farm land if "such income is derived under an arrangement, between the owner * * * and another individual, which provides that such other individual shall produce agricultural * * * commodities * * * on such land, and that there shall be material participation by the owner * * * in the production or the management of the production of such agricultural * * * commodities, and where there is material participation by the owner * * * with respect to any such agricultural * * * commodity."

The Secretary found as a fact that "during the years 1963 and 1964, claimant and one Knollman operated under an arrangement whereby a portion of claimant's farm was used for raising from the land of soy beans, hay, wheat, and corn." So that the sole questions here are whether or not the findings of "immateriality" with respect to the participation contemplated by the agreement and/or the participation which actually took place as a fact—the sole questions are whether there is substantial evidence supporting those findings by the Secretary.

■ The petitioner owns and lives on a farm consisting of approximately sixty-five acres which is in the general area of Harrison, Ohio. That farm has been her home for more than sixty years. She moved there as a six-year-old child in 1901. She lived there with her father until 1960 or 1961, at which time he died. Prior to that time the father had operated the farm, apparently. In January of 1963, she entered into an arrangement with a neighbor named Knollman under which fifty acres of her farm was to be farmed by them. The arrangement was to last an indefinite time. Income and expenses were shared on a 50–50 basis, except for machinery, which the neighbor, Knollman, exclusively contributed. There is no finding in this record by the Secretary or the Referee in respect of the amount of capital contributed by the petitioner in either year. Nor does our examination of the record indicate anything in that respect insofar as 1963 is concerned. Our review does indicate, however, that in 1964 the

petitioner's "farm expenses for the taxable year 1964" (Record pg. 59) amounted to $965.82. While there may be some dispute with respect to the relationship of some items of these expenses and the arrangement involved in this case, there can be no dispute that at least $500.00 in amount of those expenses were directly related to this arrangement. We therefore conclude as a fact—and a fact which has not been the subject of any finding heretofore—that the capital contributions of the petitioner required by the arrangement and actually made under the arrangement were most substantial— in the one year these contributions would appear to amount to fifty percent of the net realization by her from the arrangement and the other year to something better than one-third.

The record is clear that during the arrangement, which was to last indefinitely, the petitioner "does decide as to what she wants planted." In fact, the petitioner was "firm in her convictions as to what she wants planted." Since this description came from the neighbor (Record pg. 53) it is obvious that that management decision was made by her after some difference of opinion—and was in fact dictated by her.

■ At ground breaking and planting time, the petitioner made two inspections of the acreage which lasted approximately fifteen minutes each. During the growing period, she made no regular inspections, but did go around the outside of the crops. About once a year, at harvesting and marketing time, the petitioner spent some time for each crop to see that they put her one-half share in the proper place. Of considerable import is the fact that the neighbor owned and operated a neighboring farm and had done so for years and was, therefore, "familiar with all the farming methods and worked accordingly. The claimant has made suggestions, but they have never disagreed." While it is true that the petitioner, an elderly maiden lady, made no contribution of physical effort or work, it is also true that the problem of "materiality" must not be

decided in a vacuum. Between a new land owner and a new tenant farmer, one could expect frequent occasions for joint decisions. Between two old-time neighboring farmers, thoroughly familiar with the detail of the day-to-day operation of farms in a particular locality, the management decisions are, in the most part, made at the beginning and the end of the grain farm year. There is no question that the petitioner dictated what would be done at the beginning of the year, and there is no question that she participated in the determination of what to do with the crop at the end of the year. We agree—although we have somewhat added to them —with the Findings of Fact numbered 1 through 7 of the respondent and they are set forth verbatim as Appendix A to this Opinion. Findings of Fact Nos. 8 thru 10 are conclusory. In our view, the conclusions expressed in those findings—which resulted in findings of "immateriality"—resulted from the application of erroneous legal standards. As stated in Henderson v. Flemming, 283 F.2d 882, (5th Cir. 1960),

"But running through that whole concept (substantial evidence test) as a principal thread is the idea that the fact findings are acceptable only where it is evident that the correct legal standard has been employed by the trier of the fact."

■■ Prior to the 1954 amendments to the Social Security Act, it was established that all self-employed farmers were excluded from coverage under the Act. The exclusion was accomplished by an exception in the Act. In the 1954 amendments, the exclusion was deleted. In 1956, the Act was again amended and the deleted exclusion dealt with so as to broaden coverage to include farm owners or farm tenants if there was a "material participation by the owner or tenant in the production or the management of the production of * * * agricultural * * * commodities * * *." The "material participation" test must be satisfied both in the arrangement and in the actual activity.

Since the arrangement may be oral, *Hoffman v. Ribicoff*, 305 F.2d 1 (C.C. 8, 1960), at page 8, and since the arrangement between the petitioner and her neighbor extended over several years, there is no difficulty in concluding that there was in fact an arrangement in this case and that the activities demonstrated over the two-year period point out the details of that arrangement. In our view, that materially distinguishes the *Hoffman* case from this one—to say nothing of the fact that Hoffman was an absentee owner whose home was located "400 miles" from his farm and his visits to the farm came sometimes once during the year, sometimes oftener, depending upon the need. (Page 4 of the *Hoffman* decision.)

To return to "materiality" the Senate Committee on Finance, with respect to the amendments which finally became the Social Security Amendments of 1956, commented as follows:

"The bill thus would extend coverage under old-age and survivors insurance to certain farmers who, though not covered under the present law, have income from work and therefore are exposed to the type of income loss against which the program is designed to afford protection.

"Under this amendment it is contemplated that the owner or tenant of land used in connection with the production of agricultural or horticultural commodities must participate to a material degree in the management decisions or physical work relating to such activities in order for the income derived therefrom to be classified as net earnings from self-employment."

\* \* \* \* \* \*

"The committee is of the opinion that in any case in which the owner or tenant establishes the fact that he periodically advises or consults with such other individual as to production of the commodities and also establishes the fact that he periodically inspects the production activities on the land he will have presented strong evidence of the existence of the degree of participation contemplated by the amendment. If the owner or tenant also establishes the fact that he furnishes a substantial portion of the machinery, implements, and livestock used in the production of the commodities or that he furnishes, or advances, or assumes financial responsibility for, a substantial part of the expense (other than labor expense) involved in the production of the commodities, the committee feels that he will have established the existence of the degree of participation contemplated by the amendment." (Senate Report No. 2133, 84th Congress, pp. 8 and 38)

The Report of the Senate Committee on Finance, under the heading of "Purpose and Scope of the Bill" included this language:

"Your Committee has consistently held the view that the coverage of the program should be as nearly universal as practicable."

Searching through the Comments in the light of the purpose as stated in the Senate Report, we note (1) that physical work by an owner is not required; (2) that participation to a material degree in management decisions by such an owner satisfies the requirement; (3) that periodic consultations as to production and periodic inspections present *"strong"* (emphasis added) evidence of material participation; (4) if the owner also establishes the fact that he assumes financial responsibility for a substantial part of the expense, other than labor expense, involved in the production of the farm product, the Committee feels that he will have established the existence of the degree of participation contemplated by the amendment.

The evidentiary recitation of the Secretary in the Secretary's decision, as well as the findings of fact, establish, without doubt, that petitioner did make inspections and did participate in management decisions. We find these recitations, for example—

"The claimant made two inspections at ground breaking and planting time—

she inspected the crops about once a week—management decisions were made jointly—"

The respondent's quarrel with the petitioner's position, tested by the Committee Comments, is that these inspections lasted only about fifteen minutes, or that these consultations or management decisions took place only several times a year. We find nothing in the Senate Comments which test the inspections by their duration. Nor do we find any requirement that the consultations last for any specific duration of time. The guideline is "periodic" and the findings of the respondent include findings that consultations and inspections of the petitioner during the years in question were periodic.

It is further the view of this Court that the evidence establishes without a shadow of a doubt that the inspections and consultations were important and material. The basic decision to farm this sixty acres was made by the petitioner. The basic decision to grain farm it was made by the petitioner. The basic decision involving the question of what acreage was to be devoted to soy beans in what year was made by the petitioner. The record establishes the same fact with respect to where to plant hay, or wheat, or corn. She superintended and directed the storage of her part of the crops and also decided when to market those crops. Her participation therefore was material —tested by periodic, tested by import, and tested by the devotion of capital, both with relation to the neighbor-farmer and with relation to the amount of income derived by her.

This case is similar in many of its facts to Celebrezze v. Miller, 333 F.2d 29 (5th, 1964). In that case "Miller was 82 years of age when he applied for benefits in 1959. His activities had been greatly reduced about seven years prior to the filing of the application, but he continued to operate his farm of approximately 121 acres. There were two 'tenants' who cultivated cotton, corn, and sweet potatoes and they received two-thirds of the crop as their share, while Miller received the remaining one-third as the 'landlord's share.' Miller did not speak English. The agreement between Miller and his 'tenants' was oral. It was understood that Miller was to inspect the crop three or four times a month; pay one-third of the costs of fertilizer, poisons and all labor hired; absorb one-third of the loss if any; and during the periodic visits to inspect the crops and premises, to consult and advise with the 'tenants' as to the application of fertilizer and poisons, and the time and place to plant. The tenants * * *" did everything else. In the instant case, the petitioner's contribution of capital was greater relatively in that her share was one-half and it extended to seed and combine work. In other respects it is somewhat weaker. The Fifth Circuit, quoting from a previous opinion in a case referred to as the "Henderson" case, and affirming a decision of a District Court, reversing the Secretary, said:

"An owner of land who is required to (and does) furnish substantial amounts of cash, credit or supplies towards the mutual undertaking which are reasonably needed in the production of the agricultural commodity and from the success of which he must look for actual recoupment likewise makes a 'material participation.' One is hardly a mere landlord in the traditional sense if he must risk considerable funds in addition to the land in the success of the venture. And what he gets—or hopes to get—is more than rent. It is profit from the operation of a business, a business fraught with financial risks—a business of producing agricultural commodities."

The Fifth Circuit held that Miller's farm income under the arrangement was, in the parlance, "Social Security income."

The terms "miner" or "stripper" are known in farming in this area. An owner will turn his land over to someone knowledgeable in farming who will do as he wishes with that land and then turn back to the owner a percentage of the net profit. The result is not usually very

beneficial to the land—hence, the terminology. We are not here holding that income derived by an owner from a "miner" or a "stripper" is, in the parlance, "Social Security income." Nor are we holding, nor are we called on to hold here that an absentee owner, knowledgeable or not in farming, who turns over his land to a tenant farmer and merely contributes capital to the operation "materially participates" in farming as that term is used in the Social Security Act. We are holding simply that a person who has spent sixty years on a given farm and who is therefore thoroughly conversant with the agricultural questions which may arise with respect to that particular farm, who enters into an arrangement with a neighboring farmer who has farmed a neighboring farm for many years and is also generally familiar with the problems in the area, under which arrangement the owner continues to live on the farm, makes formal inspections at ground breaking and harvesting time, makes periodic inspections at other times during the year, dictates what to plant and where to plant it, is to be consulted periodically during the farm year, agrees to pay for one-half of the cost of seed and fertilizer and sprays and combine work, supervises the storage of at least one-half of the crop and makes the marketing decision from a time point of view in respect thereto—and carries out that arrangement—to repeat, we simply hold that such a person "materially participates" in farming, particularly when his or her capital outlay is substantial in respect of the net return which might be expected.

The decision of the defendant Secretary is, therefore, reversed and this cause is remanded for the entry by the Secretary of a suitable order granting appropriate benefits to the petitioner, as required by the Social Security Act and the conclusions herein set forth.

## APPENDIX A

1. During the years 1963 and 1964, claimant and Byron Knollman operated under an arrangement whereby a portion of claimant's farm was used for raising from the land of soybeans, hay, wheat and corn.

2. That hay, soybeans, corn and wheat are agricultural commodities.

3. The claimant derived from the raising of agricultural commodities on her land the sum of $998.07 in 1963 and $1,533.40 in 1964.

4. The participation of the claimant in the raising of agricultural commodities on her land in 1963 and 1964 involved the decision as to what was to be planted and where it should be planted. She shared in expenses of production. She inspected the crops about once a week but did not instruct or otherwise participate in the work of growing or harvesting of the crops.

5. Mr. Byron Knollman, during 1963 and 1964, made the necessary decisions for raising, growing and harvesting of agricultural commodities on land of the claimant. In addition, he and his employees performed all the necessary work for the raising of such commodities including the plowing, cultivating, weeding and other work in connection with the raising of such commodities.

6. Claimant's share of the crop was set aside in a place designated by her and she paid Mr. Knollman ten cents a bushel for selling it.

7. Occasionally, Mr. Edward Smith, on behalf of the claimant, would advise Mr. Knollman as to some activity in raising the crops but this advice was usually not accepted.